THIRD DIVISION

August 19, 1998

No. 1-97-2771

MARGARET KALUSH, )

)

Petitioner, ) Petition for Review of

) Order of Illinois

v. ) Department of Human

) Rights.

ILLINOIS DEPARTMENT OF HUMAN ) 

RIGHTS CHIEF LEGAL COUNSEL, )

ILLINOIS DEPARTMENT OF HUMAN ) Charge No. 1996CA3114

RIGHTS, and DELUXE CORPORATION, )

)

Respondents. )

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Margaret Kalush, the petitioner, filed an age discrimination charge with the Illinois Department of Human Rights (the Department) after being terminated by her employer, Deluxe Corporation (Deluxe).  The Department conducted an investigation and dismissed petitioner's charge finding a lack of substantial evidence.  That dismissal was affirmed by the Chief Legal Counsel of the Department and the petitioner seeks judicial review of that order.  775 ILCS 5/7-101.1, 8-111(A)(1) (West 1996).  On appeal, Kalush contends that the Chief Legal Counsel abused her discretion by failing to further investigate her charge and in sustaining the Department's dismissal of her charge.  For the reasons discussed below, we affirm.

FACTS

Petitioner alleged in her employment discrimination charge, filed with the Department on June 20, 1996, that she began employment with Deluxe, a company which produces checks and other business forms, in 1973 as an order entry clerk.  At the time of her discharge she was employed as a department manager.  The petitioner alleged that she was discharged on January 31, 1996 at the age of 42.  She stated that during the course of her employment she had received "exemplary performance reviews, and was otherwise discharging all of her responsibilities in an appropriate fashion at the time of her discharge."  The petitioner alleged that she was replaced by an existing employee, Cheryl Thompson, who was believed to be under the age of forty.  Petitioner further alleged that she was more experienced than Thompson and better qualified.  She contended that Deluxe's termination of her employment constituted age discrimination in violation of section 2-102(A) of the Illinois Human Rights Act (775 ILCS 5/2-102(A) (West 1994)).

Deluxe filed a verified response to Kalush's charge on August 15, 1996.  In that response, Deluxe asserted that Kalush's employment was terminated due to "unsatisfactory performance."   Deluxe denied that Kalush was performing her job responsibilities appropriately at the time of her discharge.  It stated that on September 6, 1995 Kalush had been placed on a 90-day warning after being informed by Bernie Sponsel, facility manager, and Barbara Lee, production manager, that she (Kalush) was not performing the basic responsibilities of her job.  According to Deluxe, Kalush received progress reviews at 30-day intervals thereafter.  On October 3 and 5, 1995, Kalush was advised that her performance continued to be unsatisfactory; on November 9, 1995, Kalush was reminded of areas where her performance needed improvement; and on December 6, 1995, Kalush's managers acknowledged improvement but pointed out areas of concern and extended the warning period an additional five weeks.  On December 27, 1995 Kalush was advised that her improvement had not been consistent, that she continued to not meet the requirements of her job, and that she would be permitted to apply for other posted job openings within the company or be terminated.

Deluxe's response further stated that Kalush never received an "exemplary" performance review and that her review ratings ranged from "High Expected" to "Probationary."  Deluxe stated that it originally replaced Kalush with Dennis Fisher, age 46, who later was replaced by Cheryl Thompson, age 35.  According to Deluxe, Thompson's performance ratings as a department manager during the period relevant to the charge were "Excellent" or "High Excellent."  Deluxe stated that Thompson was better qualified for the position of department manager than Kalush.  Deluxe also stated that at the time it terminated Kalush it terminated another department manager, Thomas Klimczak, age 38, for reasons similar to those that existed as to Kalush.

Following receipt of Kalush's charge and Deluxe's response, the Department conducted an investigation.  The Department obtained copies of performance reviews for Kalush from September 6, 1995 to the date of her termination as well as copies of reports prepared by Sponsel documenting meetings he and Lee had with Kalush concerning her job performance.  In his September 6, 1995 report, Sponsel stated that he and Lee informed Kalush that she was not meeting the minimum requirements of or the minimum time requirements for coaching/counseling and "D.P.M.S." reviews,
(footnote: 1) a basic job function of a department manager.  Kalush was told that she was not effectively recognizing and addressing employee performance issues and problems and was not engaging in effective problem solving/follow-up for those situations.  Kalush was advised that she exhibited very low skill level in the areas of human relations, communications, planning, problem solving/decision making and leadership.  Kalush was told that she needed to exhibit improvement during the next 90 days in the following areas:  updating production and job standards; updating coaching/counselling and D.P.M.S. reviews; and updating and sharing with department employees information relative to department accuracy and front-end billing errors.  Kalush also was told that at the conclusion of the 90-day warning period she would be told whether she would continue at Deluxe as a department manager.

In a report dated October 3, 1995, Sponsel stated that he and Lee conducted a formal performance review of Kalush.  They discussed with Kalush the need to develop better productivity standards for her employees; to provide good employee feedback for improvement; to cross-train employees and eliminate overtime;  to develop independent thinking and cooperation among the employees in her department; and to be proactive in providing career counseling to her employees.  Sponsel stated that Kalush "knows where she stands regarding coaching, counseling and D.P.M.S. based on previous conversations."  He stated that Kalush lacked people development skills and was too tolerant of lack of employee performance.  He stated that he and Lee discussed with Kalush their concern about her future as a manager.

In a report dated November 11, 1995, Sponsel stated that he and Lee met with Kalush for the 60-day warning period review.  Lee reviewed Kalush's coaching/counseling and D.P.M.S. records and advised Kalush that her documentation of conversations with employees needed to be more specific and that her job standards needed to be updated and applied consistently.  Kalush again was told that she needed to improve her leadership, problem-solving and decision-making skills.

Sponsel's report for the 90-day warning period review held on December 6, 1995 stated that he and Lee informed Kalush that they had reviewed her last 30 days of coaching/counseling and D.P.M.S reviews and had seen some improvement.  They also informed her that they continued to see a lack of communication, problem-solving/decision-making, and human relations skills.  Sponsel extended the warning period five weeks to January 12, 1996 but indicated in his report that he saw a "slim chance for [Kalush] continuing as a Manager and with Deluxe."

Kalush was terminated on January 31, 1996 for "[u]nsatisfactory work due to lack of job skills."  The termination policy in force at Deluxe at that time provided that an employee could be discharged without prior warning because of unsatisfactory work.

Additional information provided to the Department by Deluxe included the performance reviews of another department manager, Thomas Klimczak, who, like Kalush, had been terminated after being placed on a 90-day warning period by Sponsel and Lee.  Reports concerning those reviews, prepared by Sponsel, were submitted to the Department.  The first report, dated September 6, 1995, showed that Klimczak exhibited deficiencies similar to Kalush with respect to providing necessary and timely coaching/counseling and D.P.M.S. reviews of employees he supervised.  In that report Sponsel and Lee expressed concern about the quality of Klimczak's coaching/counseling documentation and his feedback to employees.  The 30-, 60-, and 90-day reports indicated that Sponsel and Lee continued to have concerns regarding Klimczak's communication, problem-solving and decision-making skills.  Klimczak's warning period, like Kalush's, was extended five weeks but he, too, was terminated on January 12, 1996 for "poor performance due to lack of job skills."

Other documentation provided by Deluxe showed that during the time period in question it had terminated three employees between the ages of 22 and 25, two of whom worked as telephone order clerks and one of whom worked as a sales trainer, for poor work performance.

The Department's investigation report showed that its investigator conducted telephone interviews of nine current and former Deluxe employees including Sponsel and Kalush.  (The investigator was unable to locate Lee, who was no longer employed at Deluxe.)  Sponsel told the investigator that Kalush had been placed on probation because of poor work performance and was terminated because she was not meeting her overall job responsibilities.  Sponsel also told the investigator that Klimczak, who was 38, was placed on probation and terminated for similar reasons.  Other Deluxe employees interviewed were:  Nick Fragola, age 50, production manager; Ed Kongnia, age 37, department manager; Heidi DeZonno, age 32, department manager; Dennis Fischer, age 47, department manager; Mark Lebeau, age 37, department manager; Gloria Witaker, age 44, former department manager; and Hamual Harbin, age 35, department manager.  According to the investigation report, all but Harbin stated that Deluxe managers were normally subject to work performance evaluations and could be placed on probationary status or terminated if their work performance was poor.  Harbin indicated that he was not aware of what happened when a manager failed to meet company expectations.

Based upon this information, the Department found a lack of substantial evidence and dismissed Kalush's charge.  The investigation report issued by the Department found that Deluxe's termination policy allowed for termination because of unsatisfactory work and that Kalush had been placed on probation for poor work performance.  The Department found that Deluxe placed a younger employee, Klimczak, on a 90-day probation period and discharged him due to poor work performance.  Finally, the Department found that Deluxe employed 254 employees and during the last year discharged 28 employees of which 9 were over the age of 40 and 19 were under the age of 40.
(footnote: 2)
Kalush filed a request for review of the Department's determination with the Department's Chief Legal Counsel as permitted by section 7-101.1 of the Human Rights Act (the Act).  775 ILCS 5/7-101.1 (West 1996).  In her request for review, she asserted that she had been a competent and effective department manager for Deluxe as evidenced by an April 1995 semi-annual review prepared by Barbara Lee in which she (Kalush) had been given "high marks."  (A copy of that evaluation was not submitted with Kalush's request for review.)  Kalush contended that she had been performing her responsibilities satisfactorily through the summer of 1995 when she was informed that Deluxe would be undergoing a corporate reorganization and that her department would be affected.  Kalush asserted that as part of the reorganization plan Deluxe offered her a "Business Systems" severance package which she rejected in favor of continued employment for one year on a new "customer interface project."  Kalush asserted that she agreed to leave Deluxe when that project was completed with a severance package known as the "CIP Separation Package."

In her request for review Kalush contended that the Department's investigation of her charge was deficient because the Department did not discover that all department managers had fallen behind in completing performance evaluations for their immediate work groups as a result of production pressures and other matters related to the reorganization.  She alleged that all performance review documentation for her staff was brought up to date by the end of October 1995 and that ongoing statements by Sponsel with respect to that deficiency constituted "a subterfuge to hide the real motivation behind [Sponsel's] actions" which was to terminate "Kalush along with other higher paid staff at the plant in order to reduce overall costs."  Kalush contended that Sponsel's decision to terminate her was "purely to save salary expense as well as to deny Kalush her rightful severance benefits."

Finally, Kalush contended that the Department's investigation was inadequate because the Department failed to interview Barbara Lee and because the Deluxe employees who were interviewed were not questioned regarding their observations of Kalush's management skills.
(footnote: 3)  Kalush asserted that significant evidence of wrongful discrimination existed and that she was "a victim of age discrimination perpetrated by Deluxe Corporation in its efforts to pare down its managerial work force."

On June 23, 1997, the Chief Legal Counsel issued her order sustaining the Department's dismissal of Kalush's charge for lack of substantial evidence.  The order found that the evidence showed that Kalush had been discharged because she failed to improve her work performance despite receiving several counseling sessions and opportunities to improve.  The order found that Kalush failed to establish that Deluxe's actions were motivated by Kalush's age.  It found that a similarly situated younger employee also was subject to a 90-day probationary period and was discharged for lack of improvement.  The order also noted that Kalush herself identified Sponsel's motive in terminating her as being to reduce overall costs and "'to save salary expense as well as to deny [Complainant] her rightful severance benefits.'"  In response to that assertion the order stated:

"Even assuming, 
arguendo
, that Respondent discharged Complainant in order to 'save salary expense', this, in and of itself, does not provide sufficient evidence of age discrimination which would warrant a reversal of the Department's initial determination."

DISCUSSION

Section 7A-102 of the Human Rights Act provides that the Department "shall conduct a full investigation of the allegations set forth in the charge."  775 ILCS 5/7A-102(C)(1) (West 1996).  See 
Parham v. Macomb Unit School District No. 185
, 231 Ill. App. 3d 764, 772-73, 596 N.E.2d 1192, 1197 (1992) stating,

 "Investigations conducted by administrative agencies attempt to discover and produce evidence not for the purpose of adjudicating guilt or proving pending charges, but rather to serve as the basis for determining whether facts exist to justify instituting a complaint."

The Department's investigation includes consideration of the complainant's charge, the respondent's verified response to the allegations contained in that charge; the complainant's reply to respondent's response, if filed; and supplements filed by either party while the investigation of the charge is pending.  775 ILCS 5/7A-102(B) (West 1996).

The Act further provides that each charge shall be the subject of a report to the Director and that upon review of the report the Director shall determine whether there is substantial evidence that the alleged civil rights violation was committed.  775 ILCS 5/7A-102(D) (West 1996).  A "substantial evidence" determination

"is limited to determining the need for further consideration of the charge pursuant to the Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues and questions of credibility.  Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance."  775 ILCS 5/7A-102(D)(2) (West 1996).

The Director's dismissal of the charge upon a finding of no substantial evidence is subject to review by the Chief Legal Counsel of the Department.  775 ILCS 5/7-101.1(A), 5/7A-102(D)(2)(a) (West 1996).  In conducting its review, the Chief Legal Counsel

"may consider the Director's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Director in response to the request.  In his or her discretion, the Chief Legal Counsel of the Department may designate a staff attorney to conduct an investigation into the factual basis of the matter at issue."  775 ILCS 5/7-101.1(B) (West 1996).

The determination of the Chief Legal Counsel sustaining or reversing the Department's dismissal of charges is subject to judicial review in the appellate court.  775 ILCS 5/7-101.1(A) (West 1996) ("[a]ny final order entered by the Chief Legal Counsel under [section 7-101.1] is appealable in accordance with paragraph (A)(1) of Section 8-111(A)(1)"); 775 ILCS 5/8-111(A)(1) (West 1996) ("[a]ny complainant or respondent may apply for and obtain judicial review of any final order entered under this Act by filing a petition for review in the Appellate Court").  The standard of review is to determine whether there was an abuse of discretion by the Chief Legal Counsel in his or her determination.  
Traficano v. Department of Human Rights
, No. 1-97-0565 (June 22, 1998) (abuse of discretion standard applies to review of Chief Legal Counsel's order sustaining Department's decision to dismiss petitioner's charge for lack of substantial evidence).  See also 
Parham
, 231 Ill. App. 3d 764, 596 N.E.2d 1192 (discussing scope of review of Human Rights Commission whose reviewing function of Department's dismissal of charges has as of January 1, 1996 been delegated to Department's Chief Legal Counsel (775 ILCS 5/7-101.1 (West 1996)).  Accord 
Marinelli v. Human Rights Comm'n
, 262 Ill. App. 3d 247, 634 N.E.2d 463 (1994).   On appeal, Kalush first argues that the Chief Legal Counsel abused her discretion by failing to conduct her own independent investigation pursuant to section 7-101.1(B) of the Act.  She argues that such an investigation was necessary because:  (1) the Department failed to conduct a full investigation of her complaint; and (2) her request for review raised an affirmative matter not considered by the Department.
(footnote: 4)  With respect to the inadequacy of the Department's investigation, Kalush contends that she provided the Department with a list of witnesses to be interviewed and a short summary of their involvement.  She concedes that all of these witnesses, with the exception of Barbara Lee (who had relocated to Arizona), were interviewed by the Department investigator but contends that the investigator limited his telephonic interviews of them to questions concerning Deluxe's policies with respect to reviewing the performance of its department managers and with respect to disciplining them and/or terminating them for poor performance.  She argues that those interviews should have included questions concerning the quality of her work performance and, with respect to Nick Fragola, should have extended to his involvement in discussions with Kalush in June 1995 wherein she was urged to accept the "Business Systems" severance package.  Kalush further argues that the investigator should have interviewed Barbara Lee "who had been intimately involved in the performance appraisals of Margaret Kalush for many years prior to the disciplinary action taken *** in early September, 1995" and who could have shown that Kalush had satisfactorily performed her duties prior to that time.  Finally she contends that the investigator did not review Lee's "positive performance appraisals" of Kalush given prior to the onset of the 90-day warning period.

Based upon the record before us, we cannot say that the Chief Legal Counsel's decision to forego further investigation, and the implicit finding thereby that the Department's investigation was sufficient, was an abuse of discretion.  Contrary to Kalush's contentions, it cannot be said that the Department's investigation was incomplete and limited.  There is no dispute that the investigator contacted all Deluxe employees identified by Kalush as having information relative to her charge with the exception of Lee, who had relocated to Arizona.  Although the Department's report only accounts for certain information provided by the managers, the report does not purport to be a detailed recitation of all information gathered during the course of the interviews.  Thus, there is no reason to presume, as Kalush contends, that the Department's investigator failed to elicit information regarding Kalush's work performance immediately preceding her discharge.  We must also reject Kalush's contention that the investigator's interview of Nick Fragola should have extended to Fragola's involvement in discussions with Kalush in June 1995 concerning Deluxe's severance packages.  First, for the reasons stated above, it is not clear that no such discussion occurred.  Even assuming it did not occur, however, this does not reveal a shortcoming in the investigation.  There would have been no reason for the investigator to question Fragola regarding the severance packages offered to Kalush since Kalush's charge and Deluxe's response did not mention Deluxe's reorganization and offer of severance packages and did not relate those factors in any way to the age discrimination charge.

The Chief Legal Counsel also could readily find that the Department's investigation was sufficient even though Barbara Lee was not contacted.  In that regard, we note that the investigator interviewed Bernie Sponsel, the plant manager and person who, along with Lee, evaluated Kalush's performance during the time period immediately preceding her termination.  Sponsel was the person responsible for the termination decision.  Moreover, any information Lee could have provided with respect to Kalush's job performance prior to the 90-day warning period and any documentary evidence of Lee's "positive performance appraisals" of Kalush given prior to the onset of the 90-day warning period were remote in time and would not have disproved the fact that Kalush was terminated due to poor job performance occurring immediately prior to her termination.  See 
Marinelli
, 262 Ill. App. 3d at 254, 634 N.E.2d at 469 (employee's prior good performance evaluations did not refute fact that employee's performance immediately prior to termination was deficient
).

We also reject Kalush's contention that the Chief Legal Counsel abused her discretion by failing to conduct a further investigation inquiring into a new matter raised by Kalush in her request for review which was not raised or considered during the Department's investigation.  That matter concerned Deluxe's reorganization and offer of two severance packages to Kalush and Kalush's assertion that Sponsel's decision to terminate her was motivated by a desire to save salary costs and severance benefits.  Initially, while not raised by the Chief Legal Counsel in this appeal, we note that the Chief Legal Counsel would not have had jurisdiction over the new assertion because it was not timely raised in Kalush's charge filed with the Department.  See 775 ILCS 5/7-102(A) (West 1996) (a charge must be filed within 180 days of the date an alleged civil rights violation has been committed).  Moreover, as the Chief Legal Counsel held in her order sustaining the dismissal, even assuming the new information were true, a desire to save salary expense would not in and of itself "provide sufficient evidence of age discrimination which would warrant a reversal of the Department's initial determination."  See 
Hazen Paper Co. v. Biggins
, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993); 
Chiaramonte v. Fashion Bed Group, Inc.
, 129 F.3d 391, 398-99 (7th Cir. 1997); 
Anderson v. Baxter Healthcare Corp.
, 13 F.3d 1120, 1125-26 (7th Cir. 1994) (employer's decision to terminate employee in order to reduce costs or prevent vesting of pension benefits, without more, does not constitute age discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et
 
seq
. (1982)).  See also 
Zaderaka v. Illinois Human Rights Comm'n
, 131 Ill. 2d 172, 545 N.E.2d 684 (1989) (adopting framework of federal Title VII discrimination cases when applying the Illinois Human Rights Act).

Kalush next contends that regardless of the sufficiency of the investigation of her charge the Chief Legal Counsel abused her discretion in sustaining the Department's dismissal of her age discrimination charge.  Kalush contends that she provided the Department with significant facts and well as sources of information which would have established, for purposes of a preliminary investigation, a 
prima
 
facie
 case of age discrimination.  She concedes that facts in the record "colorably suggest" that Deluxe had a legitimate, nondiscriminatory reason for its decision to terminate her.  She also concedes that the burden of persuasion would have shifted back to her to establish that Deluxe's articulated reason was a mere pretext for an act of unlawful discrimination.
(footnote: 5)
In analyzing employment discrimination actions brought under the Human Rights Act, Illinois has adopted the analytical framework utilized by the federal courts addressing discrimination claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et
 
seq
. (1982) and the Age Discrimination in Employment Act (29 U.S.C. §621 
et
 
seq
. (1982)).  
E.g.
, 
Zaderaka
, 131 Ill. 2d 172, 545 N.E.2d 684; 
Interstate Material Corp. v. Human Rights Comm'n
, 274 Ill. App. 3d 1014, 654 N.E.2d 713 (1995).  That analysis establishes a three-part test for establishing a claim of discrimination.  First, the plaintiff must establish by the preponderance of the evidence a 
prima
 
facie
 case of unlawful discrimination.  Thereafter, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff.  Second, to rebut the presumption, the employer must articulate, not prove, a legitimate nondiscriminatory reason for its decision.  Third, if the employer carries its burden of production, the presumption of unlawful discrimination falls and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but a pretext for unlawful discrimination.  
Zaderaka
, 131 Ill. 2d at 178-79, 545 N.E.2d at 687; 
Christ Hospital & Medical Center v. Human Rights Comm'n
, 293 Ill. App. 3d 105, 687 N.E.2d 1090 (1997).

To establish a 
prima
 
facie
 case of discrimination, the petitioner must show that:  (1) she is a member of a group protected by the law; (2) she was performing satisfactorily; (3) she was discharged despite the adequacy of her work; and (4) a similarly situated employee who is not a member of the protected group was not discharged.  
E.g.
, 
Traficano
, No. 1-97-0565; 
Marinelli
, 262 Ill. App. 3d 247, 634 N.E.2d 463.  
Cf
. 
ISS International Service System, Inc. v. Human Rights Comm'n
, 272 Ill. App. 3d 969, 651 N.E.2d 592, 597 (1995) (stating that necessary element to a 
prima
 
facie
 case depends upon facts in case and need not include showing that discharged employee was performing job in satisfactory manner or that he was replaced by a member of an unprotected class).  For purposes of determining whether there is substantial evidence of discrimination to support a charge, the evidence "may be somewhat less than a preponderance" but must be more than a scintilla.  775 ILCS 5/7A-102(D)(2) (West 1996).  Substantial evidence exists when a reasonable mind accepts that evidence as sufficient to support the charge.  775 ILCS 5/7A-102(D)(2) (West 1996).  Here it was not an abuse of discretion for the Chief Legal Counsel to find that a 
prima
 
facie
 case of age discrimination had not been proved by substantial evidence.

The evidence reviewed by the Chief Legal Counsel showed that Kalush only satisfied the first element of a 
prima
 
facie
 case, that she was a member of a protected class.  The Human Rights Act provides that unlawful discrimination includes discrimination against an individual because he or she is over forty years of age.  775 ILCS 5/1-103(A) (West 1996).  Kalush was 42 years old at the time of her discharge.  The evidence did not satisfy the remaining elements of a 
prima
 
facie
 case.  In her charge of age discrimination, Kalush asserted that she was replaced by an existing employee, Cheryl Thompson, who was under the age of 40, less experienced, and less qualified.  That allegation was not supported by even a scintilla of evidence acquired during the Department's investigation of the charge.  The documents submitted by Deluxe showed that Thompson was better qualified than Kalush and, as a department manager, had received performance ratings that were better than Kalush's.  See 
Traficano
, No. 1-97-0565 (finding that no 
prima
 
facie
 case established because employees not similarly situated); 
Marinelli
, 262 Ill. App. 3d 247, 634 N.E.2d 463 (finding that petitioner's co-worker was not similarly situated since there was no evidence that co-worker had error rate as high as petitioner).  Additional documentary evidence submitted by Deluxe showed that it treated similarly an employee who was not within the protected class but who was similarly situated to Kalush.  That employee, Thomas Klimczak, who was 38, was discharged, like Kalush, for poor work performance after having been placed on a 90-day warning period.  See 
Marinelli
, 262 Ill. App. 3d at 253, 634 N.E.2d at 468 (evidence that employer did not treat complainant differently from her similarly situated younger co-worker justified dismissal of age discrimination charge for lack of substantial evidence).  Accord 
Interstate Material Corp.
, 274 Ill. App. 3d at 1021-23, 654 N.E.2d at 718 (to establish 
prima
 
facie
 case of discrimination, petitioner must establish that others outside the protected class were treated more favorably).

Kalush has not set forth, either in her request for review or in her brief on appeal, any facts establishing discrimination.  In her brief she summarily states, without explanation, that "the record in this case does establish that facts exist to prove a prima facie case of age discrimination."  In her request for review, Kalush disputed the Department's finding that she was terminated because of poor job performance.  She asserted that she was performing her job satisfactorily and that she was discharged to save salary expense.  Her request for review attacked the sufficiency of the Department's interviews of the managerial witnesses.  As previously discussed, there is no indication that the Department's investigation was in any way insufficient.  Kalush's contention that, had they been asked, the managerial witnesses would have indicated that Kalush was an "efficient and effective department manager" was mere speculation and conjecture.  
Parham
, 231 Ill. App. 3d at 771, 596 N.E.2d at 1197 (speculation and conjecture cannot stand as a matter of law).  Moreover, as also discussed above, there is no reason to presume that the employees did not give information to the Department's investigator relative to Kalush's performance.  All that can be said is that any such information was not found to be relevant to Kalush's charge and thus was not included in the Department's report.

Kalush's request for review also speculated that, if contacted, Barbara Lee could have commented upon the "actual management skills and manager competencies exhibited by Kalush" and could have confirmed that she gave Kalush "high marks" in April 1995.  This contention carries little weight because, according to the reports prepared by Sponsel, Lee was involved in the performance reviews of Kalush that occurred immediately prior to her discharge; and those reports indicated that Lee expressed concerns about Kalush's performance at those times.  Moreover, as discussed above, even if Lee would have confirmed that she gave Kalush "high marks" in April 1995, that fact would not disprove evidence of poor performance by Kalush subsequent to that time.  Finally, as also discussed above, Kalush's assertion in her request for review that her discharge was due to a desire to save salary expense would not in and of itself provide sufficient evidence of age discrimination.  See 
Hazen Paper Co.
, 507 U.S. 604, 113 S. Ct. 1701; 
Chiaramonte
, 129 F.3d 391; 
Anderson
, 13 F.3d 1120 (employer's decision to terminate employee in order to reduce costs or prevent vesting of pension rights, without more, does not constitute age discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et
 
seq
. (1982)).  Since no other evidence of age discrimination was presented by Kalush, that assertion must fail as well.  Thus, given the record before it, the Chief Legal Counsel did not abuse her discretion in sustaining the dismissal of Kalush's discrimination charge for lack of substantial evidence of age discrimination.
(footnote: 6)
For the foregoing reasons, the order of Chief Legal Counsel of the Department of Human Rights dismissing petitioner's charge is affirmed.

Affirmed.

LEAVITT, P.J. and BURKE, J.

FOOTNOTES
1:
There is no indication in the record what "D.P.M.S." means.

2:
We note that the report did not indicate the number of employees over the age of 40 and and the number of employees under the age of 40.  The absence those statistics renders the statistics given in the report less than fully significant.

3:
Kalush's request for review also asserted discriminatory treatment in that Lee, who had voluntarily left Deluxe in March 1996 to relocate to Arizona, had received a severance package even though she did not qualify for any such benefit.  In sustaining the Department's findings, the Chief Counsel found that Kalush had waived this argument by not raising it in a timely manner.  See 775 ILCS 5/7-102(A) (West 1994).  Kalush has not appealed this waiver finding.

4:
Petitioner argues that there was error in both the Chief Legal Counsel's failure to conduct an independent investigation and in the Department's failure to conduct a full investigation.  However, as discussed in the text of this opinion, we review only the determination of the Chief Legal Counsel.  See 775 ILCS 5/7-101.1(A), 5/8-111(A)(1) (West 1996); 
Traficano v. Department of Human Rights
, No. 1-97-0565 (June 22, 1998); 
Parham v. Macomb Unit School District No. 185
, 231 Ill. App. 3d 764, 596 N.E.2d 1192 (1992).  It is the Chief Legal Counsel who determines the sufficiency of the Department's investigation.  See 
Gayle v. Human Rights Comm'n
, 218 Ill. App. 3d 109, 578 N.E.2d 144 (1991) (discussing power of Human Rights Commission to review sufficiency of Department's investigation under 775 ILCS 5/8-103 (West 1994), a power now delegated to the Chief Legal Counsel under 775 ILCS 5/7-101.1 (West 1996)).  Our review must then consider whether the Chief Legal Counsel abused her discretion in refusing to conduct an independent investigation which ultimately brings the sufficiency of the Department's investigation under scrutiny.  We further must determine whether the Chief Legal Counsel otherwise abused her discretion in not pursuing investigation of new matter raised in the request for review and in sustaining the Department's dismissal of the charge.

5:
In a supplemental brief filed pursuant to leave of court, Deluxe argues that Kalush is collaterally estopped from challenging the finding by the Department of Human Rights, affirmed by the Chief Legal Counsel, that she was discharged for poor performance.  In support of this argument, Deluxe notes that, in addition to filing the instant action, Kalush filed a federal lawsuit.  The latter lawsuit alleged the same wrongful termination and sought recovery on two theories:  breach of an oral employment contract and promissory estoppel.  The federal court granted summary judgment to Deluxe on both counts.  In its memorandum opinion and order, the court recited the facts of the case stating that Sponsel terminated Kalush "for unsatisfactory work performance."  The court found that no contract existed because there was no clear promise of employment, no consideration, and no writing to satisfy the statute of frauds.  The court also found that Kalush could not establish promissory estoppel because she could not prove the existence of an unambiguous promise of employment. In a footnote, the court observed the existence of certain documents in the record which could have been relied upon by Kalush as evidence of an alleged oral contract or to show she had a written contract.  The court dismissed this observation because Kalush had not raised any argument in that regard, noting further that "[i]n any case, considerable evidence indicates that Deluxe had cause to fire Kalush, especially given the climate created by the company's consolidation process and expressed intent to demand a higher standard of performance from its employees."

Deluxe relies on the federal court's statement that Sponsel dismissed Kalush for unsatisfactory work performance and the footnote quoted above as the basis for its collateral estoppel contention that Kalush is barred from relitigating the issue of the reason for her termination.  We disagree.  Collateral estoppel applies to bar relitigation of an issue where:  (1) the issue decided in the prior adjudication is identical to that presented in the current case; (2) the party against whom the estoppel is asserted was a party or privity with a party to the prior litigation; and (3) the prior suit resulted in a final judgment on the merits.  
E.g.
, 
Herzog v. Lexington Township
, 167 Ill. 2d 288, 657 N.E.2d 926 (1995); 
Rhodes v. Board of Trustees of Calumet City Policemen's Pension Fund
, 293 Ill. App. 3d 1070, 689 N.E.2d 266 (1997); 
Midland Hotel Corp. v. Director of Employment Security
, 282 Ill. App. 3d 312, 668 N.E.2d 82 (1996).  Collateral estoppel can apply only where a decision on an issue was necessary to a judgment in the first litigation and the individual sought to be bound actually litigated the issue in the suit.  
Herzog
, 167 Ill. 2d 288, 657 N.E.2d 926; 
Rhodes
, 293 Ill. App. 3d 1070, 689 N.E.2d 266.  The issue of the reason for Kalush's discharge was not litigated in the federal court nor was its determination necessary to the federal court judgment.

The issue in Kalush's federal action was whether Deluxe had made a promise of employment.  The court's statement that Kalush had been terminated for "unsatisfactory work performance" was not a finding of a disputed fact.  It did not appear in the "Analysis" section of the memorandum opinion but, rather, in the earlier section that set forth the facts of the case.  It was a recitation of the reason given by Sponsel for his termination of Kalush.  The court's footnote statement that considerable evidence indicated that Deluxe had cause to terminate Kalush also did not dispose of the federal lawsuit.  It was merely 
dictum
 since the court found the absence of a contract of employment such that Kalush could be terminated at-will.  Since the federal court decision was not required to determine the issue of the reason for Kalush's termination, the principles of collateral estoppel do not bar consideration of that issue in the instant case.

6:
In a separate argument, Kalush contends that the findings of the Department sustained by the Chief Legal Counsel were against the manifest weight of the evidence.  We will not address this argument as it is repetitious of Kalush's earlier argument that the Department's investigation was deficient.  Moreover, as discussed earlier, the standard of review of the Chief Legal Counsel's order sustaining the Department's dismissal of a charge after investigation is the more deferential abuse of discretion standard rather than the manifest weight standard applied to dismissal of charges after hearings.  
Traficano v. Department of Human Rights
, No. 1-97-0565 (June 22, 1998); 
Parham v. Macomb Unit School District No. 185
, 231 Ill. App. 3d 764, 596 N.E.2d 1192 (1992).