2026 IL App (1st) 250147-U

No. 1-25-0147

Order filed March 5, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOHN SCHOFF and JANE STOLLER-SCHOFF, | ) | Petition for Review of |
| | ) | an Order of the Illinois Human |
| Petitioners, | ) | Rights Commission |
| | ) | |
| v. | ) | |
| | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION; | ) | |
| JACQUELINE Y. COLLINS, in her Official Capacity as | ) | |
| Commissioner of the Illinois Human Rights Commission; | ) | |
| JANICE M. GLENN, in her Official Capacity as | ) | |
| Commissioner of the Illinois Human Rights Commission; | ) | |
| HOWARD A. ROSENBLUM, in his Official Capacity as | ) | |
| Commissioner of the Illinois Human Rights Commission; | ) | |
| THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS; | ) | |
| and LAKESHORE ESTATES HOMEOWNERS | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Respondents. | ) | Charge No. 2022CH0845 |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1     *Held*:    We affirm the decision of the Illinois Human Rights Commission to sustain the Illinois Department of Human Rights' dismissal of the petitioners' charge of discrimination against the Lakeshore Estates Homeowners Association for lack of substantial evidence.

¶ 2     After petitioners, John Schoff (John) and Jane Stoller-Schoff (Jane) (collectively, the Schoffs), filed a charge of discrimination against the Lakeshore Estates Homeowners Association (Association), the Illinois Department of Human Rights (Department) investigated the charge and dismissed it for lack of substantial evidence. The Schoffs filed a request for review with the Illinois Human Rights Commission (Commission), which sustained the Department's dismissal. Thereafter, the Schoffs filed a petition for direct administrative review in this court and now contend for a multitude of reasons that the Commission erred in sustaining the Department's dismissal. For the reasons that follow, we affirm the Commission's decision.[1]

¶ 3                                    I. BACKGROUND

¶ 4     In 2014, the Schoffs, Episcopalian Christians, bought a single-family residence in South Barrington, Illinois, within a subdivision managed by the Association. Based on what they described as a religious calling, the Schoffs housed asylum seekers, missionaries and refugees in their residence, sometimes by renting out rooms and other times allowing people to stay with them for free. As part of living in the Association, the Schoffs, like all other residents, were bound by covenants, conditions and restrictions, one of which prohibited nuisances. Another prohibited manufacturing, which, in part, precluded the use of any part of the property for business purposes. A third, related to building standards, stated that: "No building should be erected or maintained on any Lot in the property unless it is a dwelling house designed and equipped for occupancy as a

---

[1] This appeal is related to another appeal involving the Schoffs, which involved allegations of discrimination against the Village of South Barrington. See *Schoff v. Illinois Human Rights Comm'n*, 2025 IL App (1st) 250148-U.

private residence by a single family." The Association also had bylaws, which contained rules on short-term leasing. One bylaw stated that "[n]o home shall be leased or rented for hotel and/or transient purposes," and another prohibited the renting of "less than the entire" residence or of an individual room within a residence.

¶ 5 In March 2015, Mary Pecora, president of the Association, learned that the Schoffs were allowing someone to live in their basement. As a result, the Association sent the Schoffs a notice of noncompliance with the covenants, conditions and restrictions related to nuisances, manufacturing and building standards. The notice informed the Schoffs that their property must be maintained as a private residence and occupied by a single family. The Association asserted that swift compliance would result in the matter being closed, but if not, the Association had the right to impose fines and take legal action. In response, Jane e-mailed Pecora, indicating that they would abide by the rules and there would "be no guest" in their residence "who [was] charged."

¶ 6 In June 2019, the Association sent the Schoffs another notice of noncompliance that mirrored the notice sent in March 2015. According to Pecora, she could not remember what prompted the second notice. In response, the Schoffs e-mailed Elaine Anderson, a member of the Association's board, noting that there was no one living in their residence. According to Pecora, after the Association sent this notice, it stopped issuing notices because the Village of South Barrington had begun an administrative enforcement action against the Schoffs based on their use of the property. A few months later, the Schoffs and the Village of South Barrington settled the enforcement action, with the Schoffs ultimately obtaining a religious accommodation to house missionaries, refugees, and asylum seekers in their residence on a short-term basis.

¶ 7 In December 2019, during an annual meeting of the Association, the board discussed that the Schoffs "apparently rented out" rooms in their residence. According to the minutes of the meeting, the board noted the settlement agreement between the Schoffs and the Village of South Barrington, and despite it, the Association passed a resolution to limit the rental of residences to a non-owner single family to a term of no less than one year. The resolution required the Association to approve the lease and stated that "[s]hort term rental arrangements of any type, especially room rental or boarding do not fit within the meaning of single family purposes and are not allowed."

¶ 8 The following year, the Association adopted rules on short-term leasing of homes, which included prohibitions on leases less than one year and the leasing of individuals rooms within a residence. According to Pecora, although the Association's bylaws already prohibited short-term leasing, these rules were simply meant as an update. On January 31, 2021, an attorney representing the Association e-mailed the Schoffs, informed them that they were violating the Association's rules on short-term leasing and threatened to take legal action. In response, the Schoffs' attorney asserted that the Association was prohibiting the Schoffs' exercise of their religious observance and practice. The Association's attorney replied, asserting that its "rule applie[d] regardless of whether the leasing is to a member of a particular ethnic group/culture or, rather, to any Air BNB customer who wants to rent a party house."

¶ 9 In November 2021, believing that the Association was discriminating against them and their guests, and harassing them and their guests, the Schoffs submitted a complainant information sheet to the Department, asserting that it was a fundamental component of their religious practice to allow people to live in their residence. The Schoffs alleged that, beginning on January 31, 2021, the Association attempted to enforce rules against them to prohibit them from housing various

people in need, which they claimed was because the majority of those people were people of color of African descent and disabled people.

¶ 10    Three months later, the Department prepared a charge of discrimination on the Schoffs' behalf. The complaint, which was cross-filed with the United States Department of Housing and Urban Development, consisted of eight counts, all based on the Association attempting to enforce its rules against short-term leasing allegedly in violation of federal law and the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)). Counts A and E alleged that the Association imposed discriminatory terms and conditions against the Schoffs (Count A), and harassed the Schoffs (Count E) due to their association with asylum seekers, missionaries and refugees whose race was Black. Counts B and F alleged that the Association imposed discriminatory terms and conditions against the Schoffs (Count B), and harassed the Schoffs (Count F) due to their association with asylum seekers, missionaries and refugees whose national origin was Africa. Counts C and G alleged that the Association imposed discriminatory terms and conditions against the Schoffs (Count C), and harassed the Schoffs (Count G) due to their association with asylum seekers, missionaries and refugees who were disabled. Lastly, Counts D and H alleged that the Association imposed discriminatory terms and conditions against the Schoffs (Count D), and harassed the Schoffs (Count H) because of their religion as Episcopalians.

¶ 11    The Department investigated the Schoffs' allegations, which included interviews with the Schoffs and Pecora. In an interview with John, he noted he and his wife let people of various different ethnicities stay in their home, though he believed the Association had an issue with them allowing Black people and people with mental disabilities to reside in their home. John asserted that other families let people reside with them, including a neighbor whose parents lived with them

while other families had au pairs. Additionally, while John posited that he and his wife received four or five letters from the Association about rules violations, they did not provide those letters to the Department. In an interview with Jane, she stated that they rented out a room in their basement and offered two other bedrooms "at no cost" to disadvantaged people. In the interview with Pecora, Pecora stated that, when the Schoffs moved in, the previous owners told her that the Schoffs were planning on using their property as an Airbnb "for money." Pecora asserted that the Association had no knowledge of the race, national origin or religion of anyone living at the Schoffs' residence, and it did not have any knowledge of the Schoffs' religion. During her interview, Pecora was adamant that the Association did not perform any action "due to religion."

¶ 12     During the investigation, the Department reviewed three one-year leases the Schoffs entered into with individuals between 2019 and 2021. Two of the leases were for $500 a month while the third was for a "variable" amount per month, as health and employment of the lessee allowed. The Department also reviewed a letter from Jane to Michael Moreland, the building and zoning officer of the Village of South Barrington, where she explained her and John's actions in housing disadvantaged people emanated from a religious calling. In the letter, she stated that they " 'never charged anyone,' " though she conceded to occasionally accepting money for utilities.

¶ 13     Following the investigation, an investigator with the Department issued a report recommending that all eight of the Schoffs' counts be dismissed for lack of substantial evidence. In October 2023, the Department accepted the investigator's recommendation and dismissed the Schoffs' charge of discrimination for lack of substantial evidence. Thereafter, the Schoffs filed a request for review with the Commission. First, they argued that the Department failed to consider that religious discrimination can occur on the basis of religious practice and observance. Second,

they argued that the Department failed to consider that the Act provided expanded protections against discrimination based on religious practice and observance compared to federal law. Lastly, the Schoffs argued that there was substantial evidence of disparate-impact discrimination, and the Department failed to consider that theory. The Department responded that the Commission should sustain its dismissal.

¶ 14    In December 2024, the Commission voted three to zero to sustain the Department's dismissal for lack of substantial evidence. For Counts A, B, C and D, the Commission found that the Schoffs failed to make a *prima facie* showing that the Association subjected them to discriminatory terms or conditions because there was no evidence that it treated a similarly situated group outside of the Schoffs' protected classes more favorably under similar circumstances. Moreover, the Commission highlighted that, although the Association sent the Schoffs notices of noncompliance, the Association never levied any fines against the Schoffs or initiated any litigation against them due to the alleged noncompliance. For Counts E, F, G and H, the Commission found that the Schoffs failed to make a *prima facie* showing that the Association harassed them, as its January 31, 2021, letter—the basis for the claim in the charge of discrimination—did not constitute a pattern of harassment because it was an isolated letter attempting to obtain compliance with rules of a homeowner's association. Although the Commission observed that the Schoffs claimed to have received several notices of rules violations from the Association, the Commission highlighted that their charge of discrimination only alleged discrimination beginning with the January 31, 2021, letter. The Commission posited that the Act only provided it jurisdiction to review claims raised in the charge of discrimination, and therefore,

it could not consider the additional notices. For this reason as well, the Commission declined to entertain the Schoffs' arguments concerning a disparate-impact theory of discrimination.

¶ 15    The Schoffs subsequently filed a petition for direct administrative review in this court. See 775 ILCS 5/8-111(B)(1) (West 2020); Ill. S. Ct. R. 335 (eff. July 1, 2017).

¶ 16                                    II. ANALYSIS

¶ 17    In this direct administrative review action, the Schoffs contend that the Commission erred in sustaining the Department's dismissal, primarily because the Commission erred in how it analyzed their charge of housing discrimination based on their religion. In fact, the Schoffs do not raise any dispute with the Commission's findings on their alleged civil rights violations based upon race, national origin or disability. As such, any argument that the Commission erred in dismissing Counts A, B, C, E, F and G, which alleged civil rights violations based on race, national origin and disability, is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, we confine our analysis to whether the Commission properly sustained the Department's dismissal on Counts D and H, which alleged civil rights violations based on religion.

¶ 18    Under the Act, when a complainant timely files a charge of a civil rights violation, the Department must conduct a full investigation of the charge. 775 ILCS 5/7B-102(A), (C) (West 2020). Following the Department's investigation, if it determines there is not "substantial evidence" to support the charge, it must dismiss the charge. *Id.* § 7B-102(D)(2)(a). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

During the investigatory phase, the critical question is whether there is "enough evidence" of a civil rights violation to proceed to the adjudicatory phase. *Id.* at 20. If the Department dismisses a charge of discrimination, the complainant may file a request for review with the Commission. 775 ILCS 5/7B-102(D)(2)(a) (West 2020). If the Commission sustains the Department's dismissal, the Commission's decision becomes the final order. *Id.* § 8-111(B)(1). From there, the complainant may file a petition for direct administrative review to this court. *Id.*

¶ 19     On direct administrative review, we review the decision of the Commission, not the Department (*Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 31), and we are "empowered to review any and all questions of law or fact presented by the record." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000). But "the Commission's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2020). We, however, review the Commission's ultimate decision to sustain the Department's dismissal for lack of substantial evidence for an abuse of discretion. *Spencer*, 2021 IL App (1st) 170026, ¶ 32. Under this standard, we will not reverse the Commission's decision unless no reasonable person could agree, or the Commission's decision "contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33.

¶ 20     In arguing that the Commission improperly sustained the Department's dismissal, some of the Schoffs' key arguments concern the definition of religion under the Act, which is defined as "all aspects of religious observance and practice, as well as belief ***." 775 ILCS 5/1-103(N) (West 2020). First, the Schoffs assert that religious discrimination can be based not only on

religious identity, but also on religious exercise and practice. Given the Act's definition of religion, the Schoffs are correct that religious discrimination under Illinois law encompasses more than just discrimination based on religious identity, but extends to discrimination based on religious observance and practice. Second, the Schoffs posit that the Commission only analyzed whether the Association discriminated against them based on their religious identity. Relatedly, the Schoffs argue that the Commission failed to consider that the Act has expanded protections in religious practice discrimination cases as compared to the federal Fair Housing Act (42 U.S.C. § 3601 *et seq.* (2018)). In turn, the Schoffs contend that the Commission overlooked a critical aspect of the case, mandating reversal. See *Young*, 2021 IL App (1st) 170026, ¶ 33. Both of these latter arguments are based on the broad definition of religion in the Act. But there is nothing in the record indicating that, when sustaining the Department's dismissal for lack of substantial evidence, the Commission misinterpreted or misapplied the definition of religion, failed to consider that religion encompassed religious observance and practice, or failed to consider that the Act has expanded protections in religious practice discrimination. Thus, we reject the Schoffs' arguments related to the definition of "religion" in the Act.

¶ 21                                   A. Count D

¶ 22     We now turn to the Schoffs' charge of discrimination, beginning with Count D, in which they alleged a civil rights violation based on the Association subjecting them to discriminatory terms or conditions based on their religion. Under the Act, it is a civil rights violation for a homeowner's association to "[a]lter the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith" on the basis of religion. 775 ILCS 5/1-103(L), (Q); 3-102(B) (West 2020).

¶ 23     When Illinois appellate courts examine claims of discrimination, they have generally analyzed the evidence based on whether it was direct or indirect. *Burns v. Bombela-Tobias*, 2020 IL App (1st) 182309, ¶ 52; *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Direct evidence "prove[s] the particular fact in question, without reliance on inference or presumption." *Lalvani*, 324 Ill. App. 3d at 791. In arguing there was direct evidence of discrimination, the Schoffs point to the December 2019 minutes from the annual meeting of the Association, where the board discussed them, including the religious freedom accommodation granted by the Village of South Barrington, and then passed a resolution against short-term leasing. The Schoffs also highlight the Association's November 2020 adoption of rules against short-term leasing, and the messages between their attorney and the Association's attorney in 2021, where the Association's attorney insisted that it would enforce the rules over the Schoffs' religious freedom objections.

¶ 24     None of this is direct evidence of discrimination. The Schoffs point to no evidence, such as an oral comment (see *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993)) or an e-mail (see *Cleveland v. Prairie State College*, 208 F. Supp. 2d 967, 982 (N.D. Ill. 2002)), where the Association or anyone associated with the Association admit to attempting to enforce these rules and resolutions to infringe on the Schoffs' religion observance and practice. See *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 138 (2009) (noting that appellate courts have often relied on federal cases in analyzing discrimination claims under the Act). Viewing the December 2019 minutes from the Association's annual meeting, the Association's November 2020 adoption of rules against short-term leasing, and the messages between the Schoffs' attorney and the Association's attorney in 2021 together, one must rely on

multiple inferences to find a discriminatory intent. Rather, this evidence only demonstrated that the Association was determined to enforce its rules and regulations against short-term leasing, irrespective of any protected class.

¶ 25    In the absence of direct evidence of discrimination, our supreme court has adopted the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to analyze whether there is indirect evidence of discrimination. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989). Under this framework, the complainant bears the initial burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* If so, the burden shifts to the respondent to rebut that presumption by articulating, though not proving, "a legitimate, nondiscriminatory reason for its decision." *Id.* at 179. If the respondent does, the burden shifts back to the complainant to "prove by a preponderance of the evidence that the [respondent's] articulated reason was not its true reason, but was instead a pretext for unlawful discrimination." *Id.*

¶ 26    The elements of a *prima facie* case of discrimination will depend on the circumstances. *Acorn Corrugated Box Co. v. Illinois Human Rights Comm'n*, 181 Ill. App. 3d 122, 137 (1989). To make a *prima facie* case for Count D, the Schoffs had to show that: (1) they were a part of a protected group; (2) the Association was aware of it; (3) the Association subjected them to discriminatory terms or conditions; and (4) the Association treated a similarly situated person outside of their protected group more favorably under similar circumstances. See *Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 281 Ill. App. 3d 1066, 1074 (1996); *Turner v. Human Rights Comm'n*, 177 Ill. App. 3d 476, 487 (1988). As the Commission found, there was no evidence that the Association treated a similarly situated person outside of the

Schoffs' protected group more favorably under similar circumstances. Neither the evidence presented by the Schoffs nor any evidence uncovered by the Department during its investigation revealed a comparator, in particular a non-Episcopalian, who did not receive a notice of noncompliance letter under similar circumstances.

¶ 27    Despite the lack of a comparator homeowner, the Schoffs argue that, based on the December 2019 minutes of the annual meeting of the Association, the board was intent on taking whatever measures were necessary to halt their religious practice. It is true that "suspicious timing" is evidence "from which an inference of discriminatory intent might be drawn." *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). And it is indisputable that, in the December 2019 meeting, following the settlement agreement between the Schoffs and the Village of South Barrington, the Association discussed the Schoffs' housing practices and then adopted resolutions and rules against short-term leasing. The logical inference from this evidence is that the Association wanted to prevent the Schoffs from housing people in their residence on a short-term basis consistent with its covenants, conditions and restrictions, and bylaws. But, without more, we cannot infer that the Association did so to infringe on the Schoffs' religious practice and observance. See *Folbert*, 303 Ill. App. 3d at 25 ("[M]ere speculation and conjecture does not constitute substantial evidence."). Consequently, the Commission properly found that the Schoffs failed to make a *prima facie* showing on Count D, and therefore, it did not abuse its discretion by sustaining the Department's dismissal on Count D for lack of substantial evidence.

¶ 28                                B. Count H

¶ 29    We next turn to the Commission's decision to sustain the Department's dismissal on Count H, which alleged a civil rights violation based on the Association harassing the Schoffs in their

exercise or enjoyment of, or on account of them having exercised or enjoyed, their religion. Under the Act, it is "a civil rights violation to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed" his or her religion. 775 ILCS 5/3-105.1 (West 2020). This section of the Act is substantially similar to section 3617 of Title 42 of the United States Code (42 U.S.C. § 3617 (West 2018)). See 94th Ill. Gen. Assem., House Proceedings, Mar. 17, 2005, at 88 (statements of Representative Yarbrough) (noting the intent of section 3-105.1 of the Act was to be "substantially equivalent" to section 818 of the Fair Housing Act, which is codified at section 3617 of Title 42 of the United States Code).

¶ 30    Given the similarity between these two sections, we can rely on federal case law to provide the *prima facie* test for Count H. See *Sangamon County*, 233 Ill. 2d at 138. To make a *prima facie* case for Count H, the Schoffs had to show that: (1) they belonged to a protected group; (2) they were engaging in or enjoying their housing rights; (3) the Association coerced, threatened, intimidated, or interfered with them on account of their housing rights; and (4) the Association was motivated by an intent to discriminate. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). As such a claim involves harassment and threats, the complainant need not suffer an adverse action to bring a claim. See *id.* at 782 ("If a landlord rents to a white tenant but then threatens to evict him upon learning that he is married to a black woman, the landlord has plainly violated [section] 3617, whether he actually evicts the tenant or not."). But the degree of irritation must be "more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." (Internal quotation marks omitted.) *Id.* at 783.

¶ 31    As the Commission found, because the Schoffs' allegations in their charge of discrimination was that, beginning in January 2021, the Association harassed them by attempting

to enforce rules and regulations against short-term leasing through one letter, such an isolated incident is insufficient to constitute harassment under the Act. See *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 478, 485 (7th Cir. 2025) (where the owner of an apartment building instructed a tenant to take down a Palestinian flag "pursuant to a policy that the building would stay 'neutral' amidst the Israel-Palestine conflict," the tenant could not sufficiently allege a section 3617 claim because her complaint was based on "one action enforcing" her apartment building's " 'neutrality' policy"). Even if we were to consider the Association's earlier two notices of noncompliance from March 2015 and June 2019 together with the January 2021 letter, which the Commission properly found outside the scope of its request for review by virtue of those allegations not being included in the Schoffs' charge of discrimination (see *Kalush v. Illinois Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 991 (1998)), we would still not be able to find that three letters over the span of some six years attempting to enforce a homeowner association's covenants, conditions and restrictions, bylaws, and rules and regulations, constituted a pattern of harassment given their sporadicity.

¶ 32    Moreover, the Association's covenants, conditions and restrictions required all residences to be used privately by a single family, and the bylaws prohibited short-term leasing, specifically leasing for "hotel and/or transient purposes" and leasing "less than the entire" residence or of an individual room within a residence. Given that the governing documents predated the Schoffs moving into the Association, the Schoffs fail to demonstrate that the Association had a discriminatory intent when simply attempting to enforce its governing documents that the Schoffs were unquestionably flouting. Consequently, the Commission properly found that the Schoffs

failed to make a *prima facie* showing on Count H, and therefore, it did not abuse its discretion by sustaining the Department's dismissal on Count H for lack of substantial evidence.

¶ 33                                C. Remaining Arguments

¶ 34    Nevertheless, the Schoffs claim the Commission erred in how it analyzed the evidence, namely that it proceeded to analyze the evidence only using the *McDonnell Douglas*, 411 U.S. 792, framework. As an initial matter, that framework, adopted by our supreme court in *Zaderaka*, 131 Ill. 2d 172, has never been called into question by our supreme court. However, the United States Court of Appeals for the Seventh Circuit has remarked that, while the *McDonnell Douglas* framework is "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," the framework is "not the only way to assess circumstantial evidence of discrimination." *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). In eschewing the direct-and-indirect-evidence dichotomy, the Seventh Circuit instead asserted that "all evidence belongs in a single pile and must be evaluated as a whole" to determine the "overall likelihood of discrimination." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 763, 766 (7th Cir. 2016).

¶ 35    As we have discussed, there was no direct evidence of discrimination by the Association against the Schoffs, meaning the only alleged evidence of discrimination was circumstantial. And thus, when the Commission analyzed the alleged evidence of discrimination, the only pile of evidence was circumstantial, which it analyzed using the *McDonnell Douglas* framework. Although *Ortiz* and *David* demonstrate that this framework is not an end-all-be-all for assessing circumstantial evidence of discrimination, the critical takeaway from *Ortiz* and *David* is that all evidence of discrimination, no matter direct or indirect, must be evaluated together in a single pile.

Given that the only alleged evidence of the Association discriminating against the Schoffs was circumstantial and the Commission analyzed that evidence using the *McDonnell Douglas* framework, which is a proper manner of analysis (see *David*, 846 F.3d at 224), to determine whether there was "substantial evidence" to support the charge of discrimination, as required by the Act, we have no basis to conclude that the Commission applied an incorrect legal standard to the Schoffs' charge of discrimination.

¶ 36    Additionally, the Schoffs' posit that the Act created an affirmative duty to accommodate their religious beliefs. According to the Schoffs, citing to sections 3-103 and 3-105 of the Act (775 ILCS 5/3-103; 3-105 (West 2020)), the Commission failed to determine whether enforcement of the Association's rules was barred as void by the use of a written instrument restricting occupancy based on religious observance and practice, or barred as a condition or restriction that directly or indirectly limited use or occupancy of property for religious practice and observance. The Schoffs failed to present any of these theories in their charge of discrimination, which only levied allegations based on sections 3-102(B), 3-102.1(B) and 3-105.1 of the Act (*id.* § 3-102(B); 3-102.1(B); and 3-105.1). Thus, the Commission did not have jurisdiction to consider these theories based on other sections of the Act. See *Kalush*, 298 Ill. App. 3d at 991.

¶ 37    Furthermore, citing to *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220, ¶¶ 35-36, the Schoffs argue that, even if the Association did not intentionally discriminate against them, the Association had an obligation not to enforce its short-term housing rules as neutral rules impinging on their religious observance and practice absent a showing of undue hardship. Under this concept, which invokes a disparate-impact theory of discrimination, it is not the intent of a particular entity that matters, but rather "the broader effects of the disputed housing

practice." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 539 (6th Cir. 2014). To the extent that the Schoffs raise a disparate-impact theory on direct administrative review, it fails because, as the Commission observed, this theory was raised for the first time in their request for review. As a result, the Commission did not have jurisdiction to consider the theory. See *Kalush*, 298 Ill. App. 3d at 991. But equally as important, as we discussed in *Schoff v. Illinois Human Rights Comm'n*, 2025 IL App (1st) 250148-U, ¶ 48, a related appeal involving the Schoffs claiming the Village of South Barrington discriminated against them, the undue hardship standard and the *Robinson* case are only relevant to religious discrimination cases in the employment context, not religious discrimination cases in the housing context.

¶ 38 Additionally, we note that, during the briefing of this appeal, the Schoffs moved to supplement the record with various documents they claimed had been submitted to the Department yet were not contained in the administrative record. However, multiple documents they claimed were not included in the administrative record were, indeed, included, namely the June 2019 notice of noncompliance, a notice for the December 2019 annual meeting of the Association, minutes from that meeting, minutes from the Association's November 2020 annual meeting, various rules and regulations of the Association against short-term leasing, and the January 2021 e-mail from the Association's attorney to the Schoffs. The other documents they wanted to supplement the record with that were not part of the administrative record included the Association's complete and original covenants, conditions and restrictions, a 2021 budget of the Association, and a soil analysis of their property. A justice from this court ultimately denied the Schoffs' motion.

¶ 39 The Schoffs posit that, in light of the denial, there is a basis for a summary reversal of the Commission's decision or, at the very least, a remand to the Commission. We fail to see how the

Association's 2021 budget or a soil analysis of the Schoffs' property are at all relevant to the Schoffs' charge of discrimination against the Association, and indeed, the Schoffs never provide an explanation as to their relevancy. And while the complete and original covenants, conditions and restrictions were not included in the administrative record, the language of the relevant portions of them, specifically those relating to nuisances, manufacturing and building standards, were included, specifically in the June 2019 notice of noncompliance letter, meaning the Schoffs suffered no prejudice from the original document not being included in the administrative record.

¶ 40    Moreover, once the Schoffs filed their request for review with the Commission, the Department was required to provide a response that included: (1) a copy of the charge of discrimination; (2) its investigative report; (3) the results of any additional investigation; and (4) a position statement. 56 Ill. Admin. Code § 5300.430(a) (2022). Beyond that documentation, the onus was on the Schoffs to provide the Commission any supplemental evidence they desired the Commission to consider. 775 ILCS 5/8-103(B) (West 2020); 56 Ill. Admin. Code § 5300.410 (2022). As we discussed in *Schoff*, 2025 IL App (1st) 250148-U, ¶¶ 23-25, on a similar issue involving the administrative record, the onus was on the Schoffs to include any supplemental evidence they wanted the Commission to consider when assessing their request for review. Because they failed to include the complete and original covenants, conditions and restrictions, the Association's 2021 budget, and the soil analysis, there is no basis to summarily reverse the decision of the Commission or remand the matter to the Commission.

¶ 41    Lastly, the Schoffs argue that, because the Department's investigation failed to properly analyze their claims of religious discrimination to include whether they were discriminated against based on their religious observance and practice, the Commission should have used its authority

to obtain additional information to reach its decision on their request for review. Under the Act and its regulations, the Commission has discretion to further investigate factual matters underpinning a request for review (see 775 ILCS 5/8-103(B) (West 2020)) or obtain additional information to aid in its consideration of a request for review. See 56 Ill. Adm. Code § 5300.470 (1981). Here, there was a complete lack of evidence that the Association subjected the Schoffs to discriminatory terms or conditions on the basis of religion, or harassed them on the basis of religion. Because of this lack of evidence, the Commission did not need to exercise its discretion to investigate the Schoffs' charge of discrimination further or obtain additional information to aid in its consideration of their request for review.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the decision of the Commission.

¶ 44    Affirmed.