WILLIAM JAGIELNIK, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF MUNDELEIN et al., Defendants-Appellants.

Second District   No. 2—90—0819

Opinion filed April 4, 1991.

28

Stanley H. Jakala, of Berwyn, for appellant.

Charles F. Marino, of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, William Jagielnik, appeals the dismissal of his complaint for administrative review. The defendants (referred to collectively hereafter as the Board) moved for dismissal of the complaint under section 2—619 of the Civil Practice Law, alleging the circuit court of Lake County did not have jurisdiction of the cause because Jagielnik's complaint was not taken from an "administrative decision" as defined in section 3—101 of the Administrative Review Law. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—619, 3—101.) We affirm the circuit court's dismissal of the complaint.

■ Jagielnik applied to the Board for a 50% not-on-duty disability pension as provided for in section 3—114.2 of the Illinois Pension Code (the Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.2). That section provides for a disability pension of 50% of the officer's salary at the time of his or her suspension of duty or retirement if the officer has become physically or mentally disabled "as a result of any cause other than the performance of an act of duty." At the time he petitioned, Jagielnik had charges of misconduct pending against him before the Mundelein Board of Fire and Police Commissioners and

criminal charges pending against him in the circuit court of Lake County, Illinois.

The charges before the Board of Fire and Police Commissioners alleged that Jagielnik, while in uniform and on duty, committed various offenses against a young woman, J.M., in February, March, and April 1989. Allegedly, Jagielnik grabbed J.M.'s breasts on one occasion and made lewd and suggestive remarks to her on several occasions. Also, allegedly, Jagielnik ordered J.M. to meet him at a specific time and place and be friendly with him or he would cause her problems with the Village of Mundelein and cause traffic citations to be issued against her. The Board of Fire and Police Commissioners did not hear the matter because Jagielnik resigned as a police officer on June 2, 1989.

The charges pending before the circuit court of Lake County, Illinois, involved the same conduct as the charges before the Board of Fire and Police Commissioners. Pursuant to a negotiated plea agreement, the State's Attorney nol-prossed two felony counts, and the court found Jagielnik guilty of the remaining count, a misdemeanor battery. The court imposed a $500 fine and a one-year term of probation conditioned upon psychiatric counseling. The factual basis for the plea was stipulated to be as follows:

"If the matter came to trial, [J.M.] would testify that she was an employee of the White Hen Pantry in Mundelein, Lake County, Illinois; and in mid-March 1989, [Jagielnik] came into the Pantry and after some comments which she construed as having sexual undertones, he asked to use the phone, at which time she gave him permission; and he, in passing in close proximity to her, did touch her breasts in a manner which she found insulting and provoking; he did make actual physical contact with her breasts, and this all happened in Lake County, Illinois."

Along with his petition to the Board for a disability pension, Jagielnik submitted a written report dated May 27, 1989, from Dr. Marlene E. Casiano, a psychiatrist, who stated that Jagielnik was suffering from severe symptoms of depression and that "the precipitant for his severe depressive reaction was his being accused of making sexual advances to a woman at a grocery store."

At the request of the Pension Board, three other psychiatrists examined Jagielnik. All three were of the opinion that Jagielnik was mentally disabled for service as a police officer and that his disability was the consequence of being accused of making sexual advances to a woman at a grocery store and the events which followed. The three

psychiatrists also stated that Jagielnik had no history of a prior mental illness nor was there any evidence that he might have had a prior mental illness.

The Board determined that there was no issue with respect to Jagielnik's being mentally disabled. However, since all of the psychiatrists reported that Jagielnik's mental disability was the result of accusations of sexual conduct toward J.M., it felt this raised a question whether such accusations were true or false. If the accusations were true, then Jagielnik's mental disability "could be the result of his own intentionally committed wrongful act."

The Board set the matter for a public hearing on September 14, 1989, at which time the Village and Jagielnik would be permitted to present evidence relative to the issues the Board felt were presented. *Inter alia*, those issues were: whether section 3—114.2 of the Code incorporates the public policy which precludes a wrongdoer from profiting from his intentionally committed wrongful act; whether Jagielnik, in fact, committed one or more wrongful acts; whether, if he did commit one or more wrongful acts, his present mental disability resulted from such wrongful act or acts and the events which followed; and whether, if he did not commit any wrongful act or acts, his mental disability resulted from the performance of an act of duty.

Following a continuance, the Board convened, and Jagielnik moved, first, for another continuance and, second, to bar the hearing altogether based on certain legal grounds contained in a memorandum filed with the motion. The supporting affidavit of Dr. Marlene Casiano which was appended to Jagielnik's continuance motion was described in the Board's interim ruling. Dr. Casiano stated in her affidavit that Jagielnik would be unable to participate as a witness in the proceeding without risk of aggravating his stress-related disorder and, in Dr. Casiano's opinion, his present condition would not enable him to testify for at least three months.

The crux of Jagielnik's motion to bar the hearing, also described in the Board's interim ruling, was that section 3—114.2 of the Code (not-on-duty disability pension) does not incorporate the public policy precluding an intentional wrongdoer from profiting from his wrongful act. He relied on section 3—147 of the Code (providing that no benefits will be paid to any person convicted of any felony relating to or arising out of or in connection with his or her service as a police officer) in support of his argument that he can lose his disability pension benefits only if he is convicted of a service-related felony.

The Board granted Jagielnik's request for a further continuance, subject to an examination by psychiatrist Dr. Alan N. Miller to evalu-

ate Jagielnik's ability to testify at the hearing on the matter. It also established a briefing schedule on Jagielnik's motion to bar a hearing.

Dr. Miller's report to the Board was that Jagielnik had improved considerably since the doctor last saw him and Jagielnik had, in fact, found a new job. Dr. Miller further reported that Jagielnik was at risk of relapse should he be forced to testify at a public hearing, but that, in the doctor's opinion, Jagielnik was fully capable of preparing written statements on the matter.

The attorneys for both parties advised that they did not wish to make oral argument on the motion to bar a hearing and would stand on their briefs. They also agreed that the Board should take the motion to bar the hearing under advisement and issue a ruling by mail.

The Board denied Jagielnik's motion to bar a hearing in its interim ruling dated December 12, 1989, determining, *inter alia*, that the language of section 3—147 of the Code did not thereby exclude reasons *other* than a felony conviction for a police officer's losing his or her disability pension benefits. Expressing its belief that the Village and Jagielnik should have an opportunity to present evidence on the matter of the charges against Jagielnik, and, in light of Dr. Miller's opinion of Jagielnik's fragile emotional state and Jagielnik's probable ability to prepare a written statement, the Board continued the cause to February 8 and requested the parties to submit within 30 days "(1) any authorities on whether or not [the] Board may conduct a hearing closed to the public and (2) any authorities on whether or not [the] Board may accept Mr. Jagielnik's testimony given at a deposition or accept an affidavit *** in lieu of his testimony at a hearing" or any other suggestions the parties might have as to how to resolve the problem.

On January 16, 1990, Jagielnik filed his complaint for administrative review of the Board's December 12 interim ruling. Following the submission of memoranda of law and argument by the parties, the trial court concluded the Board's interim ruling contemplated further proceedings and, as such, Jagielnik's complaint for administrative review was not an appeal from a ruling which terminated the proceedings before the administrative agency. Jagielnik then brought the instant appeal, contending (1) the Board's order was a final order subject to administrative review and (2) a mental disability resulting from the commission of a misdemeanor battery does not bar the awarding of a not-on-duty pension.

■ ■ In determining the propriety of the dismissal of a complaint, the reviewing court is concerned only with the questions of law presented by the pleadings (*Dick v. Peoples Mid-Illinois Corp.* (1990),

195 Ill. App. 3d 654, 658; *People ex rel. Lee v. Kenroy, Inc.* (1977), 54 Ill. App. 3d 688, 690-91) and will affirm if the court's decision is correct regardless of the reasons assigned by the court for the dismissal (*Lasswell v. Ehrlich* (1981), 92 Ill. App. 3d 935, 936). Under section 3—148 of the Code, all final administrative decisions of the Pension Board are judicially reviewable under the provisions of the Administrative Review Law, and an "administrative decision" is as defined therein. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—148.) " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." Ill. Rev. Stat. 1989, ch. 110, par. 3—101.

Judicial review can only be undertaken where there is a final agency determination. (*Taylor v. State Universities Retirement System* (1987), 159 Ill. App. 3d 372, 374.) Such a determination is made following "some sort of adversarial process involving the parties affected, where a hearing on controverted facts is held, and ultimately a disposition is rendered by an impartial [fact finder]." (*Taylor*, 159 Ill. App. 3d at 376.) In the absence of such a final administrative decision, the circuit court lacks jurisdiction to consider the matter. Ill. Rev. Stat. 1989, ch. 110, par. 3—102; *Bi-State Development Agency v. Department of Revenue* (1990), 205 Ill. App. 3d 668, 672.

As we perceive it, Jagielnik's complaint for administrative review presents only a challenge to the Board's denial of his motion to bar the hearing and its decision to proceed to take evidence on the matter. His complaint characterizes the interim ruling as "denying [him] his petition for a 50% disability *** not on duty pension, when the interim order has denied [his] motion to bar a hearing, thereby resulting in such a denial."

On its face, the Board's interim ruling is merely a procedural step in the process of arriving at its "administrative decision." Jagielnik argues, however, the Board's designation of its ruling as an "interim" one is not controlling and posits the ruling is a final administrative decision subject to judicial review in that it fixed the rights and liabilities of both himself and the Board. That is, all the prerequisites to his receiving a not-on-duty disability pension were met: (1) based on the evaluations of the three psychiatrists selected by it, the Board found that, as a result of a cause not arising out of an act of duty, he was mentally disabled to such a degree that he could no longer serve as a police officer; (2) his application for the disability pension was timely; (3) he was not discharged from the police force; and (4) he has not

been "convicted of any felony relating to or arising out of or in connection with his \*\*\* service as a police officer" which precludes the payment of benefits provided under section 3—147 of the Code. Moreover, the hearing scheduled by the Board is not for the limited authorized purpose of receiving "other evidence of disability" as provided in section 3—115 of the Code. Thus, Jagielnik argues, the ruling should be viewed effectively as having terminated the proceedings.

The Board argues its interim ruling should be regarded as an interlocutory order only since it contemplates an evidentiary hearing prior to the rendering of a final decision on Jagielnik's application for a mental disability pension. Authority to hold such a hearing, it argues, is derived from its power under section 3—136 of the Code to compel witnesses to attend and testify before it "upon all matters connected with the administration of this Article." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—136.) In light of the further proceedings contemplated, the Board posits there was not yet an "administrative decision" subject to administrative review and the trial court's dismissal of the cause should be affirmed. We agree.

Jagielnik's contention that the statement in the Board's ruling that it determined "there was no issue with respect to [his] being mentally disabled" is conclusive on the issue of his disability is without merit. A case cited by Jagielnik himself refutes the contention. In *Caauwe v. Police Pension Board* (1989), 184 Ill. App. 3d 482, the trial court's order affirming the pension board's denial of a police officer's application for disability pension due to back injuries was reversed and the cause remanded so that the board could receive certifications of the three doctors as to the police officer's disability or lack thereof. (*Caauwe*, 184 Ill. App. 3d at 486.) The police officer there was denied a disability pension after an evidentiary hearing at which the board received reports from its three selected doctors in the form of uncertified, unsworn, unverified, written medical reports. Based on the evidence of these reports, the Board found "these three doctors do not all certify Detective Caauwe's disability." 184 Ill. App. 3d at 484.

On appeal, the officer argued that because the doctors failed to certify his disability, or lack of disability, in their medical reports, there was insufficient evidence before the pension board on which to predicate any finding of disability or lack thereof. The court agreed, noting section 3—115 of the Code mandates that the three selected physicians are required to furnish the pension board with subscribed and sworn-to certificates of the applicant's disability. Because the pension board did not require the certificates to be furnished nor did the physicians submit such certificates, the trial court's affirmance of the

board's denial of the disability pension was reversed and the cause remanded.

■ In the case at bar, and contrary to Jagielnik's assertion during oral argument, the manner in which the three doctors "reported" their findings is not evident, and we find no certificates or references to same in the record before us. Based on this record, the Board's statement here that it determined that "there was no issue with respect to Mr. Jagielnik's being mentally disabled" cannot be deemed an administrative decision which "terminates the proceedings before the administrative agency." We note moreover that the Board's interim ruling specifically contemplates that one of the issues to be determined is whether "[Jagielnik's] mental disability resulted from the performance of an act of duty." It is clear, therefore, that no determination has been made as to whether Jagielnik is or is not entitled to a disability pension in the first place, and, secondly, whether the disability is on-duty or not-on-duty related. Ill. Rev. Stat. 1989, ch. 108½, pars. 3—114.1, 3—114.2.

■ Jagielnik's additional argument that the Board is limited by section 3—115 to receiving only "other evidence of disability" in further proceedings before it is unsupported by any authority. On its face, section 3—115 shows the Board is *not* limited to receiving certificates of the police officer's disability only, but that it "may require other evidence of disability." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—115; see *Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund* (1989), 186 Ill. App. 3d 715, 723 n.2.) Other evidence concerning whether the Board will grant or deny the officer's application for disability pension is not limited by section 3—115 to only "evidence of disability." (*Cf. Caauwe,* 184 Ill. App. 3d at 485 ("Once the three certificates were submitted, the pension board was empowered *to admit and weigh additional evidence relative to either granting or denying the disability pension request"* (emphasis added)).) Further, as pointed out by the Board, it has the power under section 3—136 of the Code to compel witnesses to attend and testify "upon all matters" concerning its administration of the pension fund. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—136.) Acceptance of Jagielnik's narrow construction of section 3—115 would nullify the broad language of section 3—136 and contravene the well-settled principle that a statute should be construed so that no word or phrase is rendered superfluous or meaningless. *People v. Parvin* (1988), 125 Ill. 2d 519, 525; *People v. Knop* (1990), 199 Ill. App. 3d 944, 951.

We find Jagielnik's citations to *Stec v. Oak Park Police Pension Board* (1990), 204 Ill. App. 3d 556, and *Hahn v. Police Pension Fund*

(1985), 138 Ill. App. 3d 206, are irrelevant to the issue of whether the Board's interim ruling here is an administrative decision which may be judicially reviewed. We also find that *Board of Education of Valley View Community Unit School District No. 365U v. File* (1980), 89 Ill. App. 3d 1132, is distinguishable. Jagielnik relies on *File* to support his contention that the instant interim ruling terminated the proceedings despite the fact it did not contain "findings."

In *File*, a tenured teacher was dismissed by the Board of Education effective June 30, 1976, and, pending a hearing pursuant to the school code, was suspended without pay. A lengthy 13-day hearing over the course of a nine-month period was held and the filing of post-hearing briefs was completed by July 11, 1977. It was not until May 30, 1978, however, that the hearing officer ruled (1) that File's dismissal was not for just cause; (2) that she was to be reinstated and, preferably, transferred to a position with new supervisors; and (3) that she was to receive one year's back pay. The hearing officer explained by letter that his ruling was being made "without explanation" at that time due to his serious health problems and pending heart surgery but that the explanation would follow as soon as he was able to return to work.

On administrative review sought by both parties, the circuit court found the lack of written findings precluded judicial review of the hearing officer's order, declaring same to be null and void and remanding for a hearing *de novo*. The circuit court was reversed on appeal; however, the court finding that the hearing officer's failure to submit written findings in conjunction with his order did not make that order any less a final order. "For all practical purposes, [the hearing officer]'s order *** terminated the proceedings before him, and fixed the rights and liabilities of both the Board and Mrs. File." 89 Ill. App. 3d at 1136.

Although the court found the order thus was final and subject to judicial review under the administrative review law, it nonetheless found the order *not reviewable* because the officer's "bare decision" that File's dismissal was not for just cause provided no basis upon which a reviewing court might find the decision contrary to, or supported by, the manifest weight of the evidence. (*Cf. Fagiano v. Police Pension Board* (1984), 123 Ill. App. 3d 963, 982-83 (unlike the order in *File*, city personnel board's discharge of city employee provided adequate ground for review where hearing officer's findings adopted by board were sufficient to satisfy questions of jurisdiction, procedural due process, and sufficiency of evidence, coupled with clear and complete record of hearing fully capable of review).) It disagreed that re-

mandment for a hearing *de novo* was the proper disposition, however, since the order was defective only in that it lacked findings. Accordingly, the cause was remanded to the hearing officer for the purpose of obtaining his written findings, which could then be judicially reviewed.

*File* is distinguishable from the instant cause in that the order in *File* at least was dispositive, albeit not reviewable without the hearing officer's findings. File's dismissal was found to be "not for just cause." (*File*, 89 Ill. App. 3d at 1133.) Here, nothing dispositive of Jagielnik's right to a disability pension has yet occurred. The Board has neither granted nor denied him a disability pension; it simply seeks to receive more evidence on the question. Undoubtedly because there has been no disposition, Jagielnik has not shown here that he has been prejudiced by an administrative decision of the Board. It is axiomatic that "[a] party seeking reversal has the burden of establishing prejudice." *Bi-State Development Agency v. Department of Revenue* (1990), 205 Ill. App. 3d 668, 672.

■ Because we conclude the Board's interim ruling is not an administrative decision subject to judicial review under the administrative review law and that the cause properly was dismissed, we have no authority to render what would amount to an advisory opinion on the merits of the issue of whether a mental disability resulting from the commission of a misdemeanor battery bars the award of a non-on-duty disability pension. Consequently, we do not address that issue.

The judgment of the circuit court of Lake County dismissing the plaintiff's complaint for administrative review is affirmed.

Affirmed.

DUNN and GEIGER, JJ., concur.