PINKERTON SECURITY AND INVESTIGATION SERVICES, Petitioner-Appellant, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents-Appellees.

First District (2nd Division)    No. 1—98—0339

Opinion filed May 26, 1999.—Modified on denial of rehearing December 21, 1999.

50

Mark Hansen and J. Kevin Hennessy, both of Banta, Hennessy & Graefe, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick and Kent Sezer, Assistant Attorneys General, of counsel), for respondents.

JUSTICE McBRIDE delivered the opinion of the court:

Petitioner, Pinkerton Security and Investigation Services (Pinkerton), appeals from an order of the chief legal counsel of respondent Illinois Department of Human Rights (Department), which sustained the finding of default against Pinkerton in the sexual discrimination charge filed by co-respondent Kimberly Jenkins (Jenkins) under the Illinois Human Rights Act (Act) (775 ILCS 5/7—101 et seq. (West 1996)). Petitioner claims that the Act violates due process by authorizing the Department to issue final default orders and that the default order entered in this case was improper and should be vacated.

Co-respondent Illinois Human Rights Commission (Commission) has filed a motion to dismiss Pinkerton's appeal for lack of jurisdiction. We agreed to consider this motion with the case, and, for the reasons set forth below, we grant the motion and dismiss the appeal.

On May 13, 1997, Jenkins filed a discrimination charge with the Department against her employer, Pinkerton, alleging that her suspension and discharge were based on her sex as related to pregnancy. Pinkerton filed its response on July 23, 1997, and denied her allegations.

On August 13, 1997, Pinkerton's human resources director notified the Department that he was no longer working for Pinkerton and that Mark Motylinski would be the new contact person. Motylinski requested a new date for a fact-finding conference that had previously been set by the Department for August 14. The Department offered a one-week extension. Motylinski stated that he could not attend because he would be out of town.

On the same date, the Department sent Motylinski a fax requesting a 60-day extension of the one-year time limit for investigating the

charges. The Department requested that Motylinski sign the enclosed extension form and return it to the Department as soon as possible. The fax transmittal sheet that accompanied that request stated that the Department was trying to reschedule the fact-finding conference, that it needed both parties to sign an extension in order to do so, and that the extension had to be signed and faxed to the Chicago office by 4 p.m. that day or Pinkerton would have to be present at the hearing as scheduled. Motylinski responded by fax that Pinkerton would not authorize the extension request and that he was awaiting written notification of the fact-finding conference tentatively scheduled for August 21, 1997.

The fact-finding conference was held on August 14, 1997. Jenkins was present, but Pinkerton was not; as a result, the Department issued a rule to show cause why a notice of default should not be issued against Pinkerton for its nonattendance. Pinkerton filed a timely response setting forth the series of events leading to August 14, 1997, and attempted to explain how the personnel change made it extremely difficult to coordinate the attendance of six individuals for the conference in less than 24 hours. Pinkerton also rescinded its previous denial of the extension request and signed the extension document.

On September 12, 1997, the Department issued a notice of default against Pinkerton for its failure to attend the fact-finding conference "despite the reasonable requests made by the Department." Pinkerton filed a timely request for review. The Department's chief legal counsel sustained the finding of default, expressing regret that Pinkerton had several representatives in the case, but finding that Pinkerton had not shown good cause sufficient to vacate the Department's decision. Pinkerton was advised that the chief legal counsel's order was a final order and this petition for review followed. We first address the jurisdictional issue posed by the Commission in its motion to dismiss the appeal.

■ The Illinois Constitution provides that the appellate court has powers of direct review of administrative action as provided by law. Ill. Const. 1970, art. VI, § 6. In reviewing an administrative order, the appellate court exercises special statutory jurisdiction, and the power of the court is limited by the language of the act conferring the jurisdiction. *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1, 6-7, 649 N.E.2d 404 (1995).

■ The statutory source of this court's power to hear the present case is under section 8—111(A)(1) of the Act (775 ILCS 5/8—111(A)(1) (West 1996)). *McGaughy*, 165 Ill. 2d at 7. That section provides:

"Any complainant or respondent may apply for and obtain judicial review of any *final order* entered under this Act by filing a

petition for review in the Appellate Court within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." (Emphasis added.) 775 ILCS 5/8—111(A)(1) (West 1996).

Our review is therefore limited to a "final order" entered under the Act. The Act does not define "final order" and the parties differ on its meaning in this context.

■ Section 7—101.1(A) of the Act provides, in pertinent part, that the chief legal counsel of the Department has jurisdiction to

"hear and determine requests for review of (1) decisions of the Director to dismiss a charge; (2) notices of default issued by the Director; and (3) dismissals for refusal to accept a settlement offer. Any final order entered by the Chief Legal Counsel under this Section is appealable in accordance with paragraph (A)(1) of Section 8—111." 775 ILCS 5/7—101.1(A) (West 1996).

Petitioner contends that the default order sustained by the chief legal counsel in this case was a "final order" under this section and therefore reviewable. The Department, like petitioner, contends that the default order was final and maintains that this construction is supported by the definition of "administrative decision" in the Administrative Review Law of the Code of Civil Procedure. 735 ILCS 5/3—101 et seq. (West 1996). This law is incorporated in Supreme Court Rule 335 (155 Ill. 2d R. 335(i)(2)), which governs direct review of an order of an administrative agency by the appellate court.

■ Under section 3—101, "administrative decision" or "decision" is defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1996).

Under the facts of this case, the Department argues that the order of the chief legal counsel satisfies the criteria of section 3—101 and is therefore final and appealable. 735 ILCS 5/3—101 (West 1996). The Commission disputes that conclusion, asserting that the proceedings in this default matter did not terminate at that level. In support of its argument, the Commission cites section 7—101.1(C) of the Act, which provides that when "the default is sustained on review, the Commission shall enter a default order and set a hearing on damages." 775 ILCS 5/7—101.1(C) (West 1996). Based on the continuity of action set forth in this section, the Commission argues that the administrative decision is not complete or "final" for purposes of appeal until both steps have been accomplished.

Although a decision of the chief legal counsel sustaining a dismissal of a complaint under section 7—101.1(A) is considered a final

order (*Kalush v. Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 988-89, 700 N.E.2d 132 (1998)), we have found no decisions interpreting whether a default order entered under this same section is a "final order" for purposes of appeal.

We do not agree with the Department's contention that the question on appeal is simply whether the chief legal counsel rendered an "administrative decision" as defined under section 3—101. 735 ILCS 5/3—101 (West 1996). The pertinent inquiry is whether the decision entered by the chief legal counsel sustaining the default was a "final order" for purposes of appellate review. See 775 ILCS 5/8—111 (West 1996). That question cannot be answered by merely reviewing the statutory definition of the term "administrative decision" under section 3—101 (735 ILCS 5/3—101 (West 1996)) because we do not equate every "administrative decision" with the term "final order."

As already pointed out, although section 3—101 of the Administrative Review Law defines what an administrative decision is, it does not define what a "final" administrative decision is. 735 ILCS 5/3—101 (West 1996). Additionally, "final order" is not defined under section 7—101.1 of the Human Rights Act. 775 ILCS 5/7—101.1 (West 1996). Moreover, section 7—101.1(A), which gives the chief legal counsel jurisdiction to review default orders, provides only that "[a]ny final order entered by the Chief Legal Counsel under this Section is appealable in accordance with paragraph (A)(1) of Section 8—111." 775 ILCS 5/7—101.1(A) (West 1996). It does not say that all orders entered under this section are final orders. Additionally, we note that the terms "final administrative decision" and "final order" are not defined in either the Administrative Review Law or the Act. See 735 ILCS 5/3—101 *et seq.* (West 1996); 775 ILCS 5/8—111 (West 1996).

Because little guidance can be found in the relevant statutory sections, we believe jurisdiction hinges upon whether the order entered by the chief legal counsel was in substance a "final order," or whether it was an interlocutory order not subject to judicial review. See *Davis v. Human Rights Comm'n*, 286 Ill. App. 3d 508, 514-15, 676 N.E.2d 315 (1997) (holding an order that was interlocutory in form to be final in substance where the force and effect of the order was tantamount to a permanent injunction depriving complainant of a recognized property right); see also 775 ILCS 5/8—111(A)(1) (West 1996) (allowing permissive appeals from an interlocutory order where the full Commission or a three-member panel finds the order involves a question of law as to which there is substantial grounds for difference of opinion and an immediate appeal would advance the termination of the litigation). We conclude that the default order entered in this case was an interlocutory order not subject to judicial review for the reasons that follow.

■ Before beginning our jurisdictional analysis, a review of the functions of the Department and the Commission under the Act is relevant. Under the Act, the Department has the power to investigate charges in order to determine whether a complaint should be filed with the Commission. 775 ILCS 5/7—101(B), (D) (West 1996). Section 7A—102(C)(1) of the Act further provides that the Department "shall conduct a full investigation of the allegations set forth in the charge." 775 ILCS 5/7A—102(C)(1) (West 1996). As part of the investigation, and after reasonable notice to the parties, the Department may conduct a fact-finding conference. 775 ILCS 5/7A—102(C)(4) (West 1996). The purpose of the fact-finding conference is to obtain evidence, identify issues in dispute, ascertain the positions of the parties, and explore the possibility of reaching a negotiated settlement. *Jabbari v. Human Rights Comm'n*, 173 Ill. App. 3d 227, 231, 527 N.E.2d 480 (1988). The failure of any party to attend the fact-finding conference without good cause shall result in either a dismissal or a default. 775 ILCS 5/7A—102(C)(4) (West 1996).

In contrast, under the Act, only the Commission has the authority to hear and decide complaints. 775 ILCS 5/8—102(G) (West 1996). Until a complaint is issued by the Department, the proceedings are investigatory and not adjudicatory. *Webb v. Lustig*, 298 Ill. App. 3d 695, 703, 700 N.E.2d 220 (1998). A default order involves functions of both the Department and the Commission. 775 ILCS 5/7A—102(C)(1), 7—101.1(A), (B), (C) (West 1996).

■ Section 7—101.1(C) of the Act provides where "a respondent fails to file a timely request for review of a notice of default, or the default is sustained on review, the Commission shall enter a default order and set a hearing on damages." 775 ILCS 5/7—101.1(C) (West 1996). Although the Department and the Commission are both assigned functions in the default process, there are not two distinct, separate administrative actions at work. Nor do we interpret assigning separate functions to both the Department and the Commission in processing a default as an intent to permit separate appeals from each step in the process and to thereby contravene the general rule that limits review to final orders. See *Kvidera v. Board of Fire & Police Commissioners*, 168 Ill. App. 3d 380, 381-82, 522 N.E.2d 757 (1988); *Harold Butler Enterprises No. 662, Inc. v. Underwriters at Lloyds, London*, 100 Ill. App. 3d 681, 686, 427 N.E.2d 312 (1981).

■ Although the Administrative Review Law does not define "final administrative decision," it is well established that judicial review can be undertaken only where there has been a final agency determination. *Jagielnik v. Board of Trustees of the Police Pension Fund*, 211 Ill. App. 3d 26, 32, 569 N.E.2d 1293 (1991), citing *Taylor v. State Universi-*

*ties Retirement System*, 159 Ill. App. 3d 372, 374, 512 N.E.2d 399 (1987). Generally, a final agency determination follows some sort of adversarial process involving the parties affected, a hearing on controverted facts, and ultimately a disposition rendered by an impartial fact finder. *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill. App. 3d 224, 228-29, 674 N.E.2d 38 (1996); *Margaret Manor, Inc. v. Lumpkin*, 279 Ill. App. 3d 776, 780, 665 N.E.2d 318 (1996); *Board of Trustees of Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 881, 608 N.E.2d 1274 (1993).

■ Were we to analyze what occurred in the instant case under the above-cited authority, we would conclude no final administrative determination or "final order" was entered by the chief legal counsel. That is because the fact-finding conference was not an adversarial proceeding where contested facts were heard. Instead, at the conference, one party (Jenkins) appeared and the other (Pinkerton) did not. A notice of default was subsequently entered by the Department against Pinkerton for its failure to appear. Upon review, the chief legal counsel sustained the default, finding, among other things, that Pinkerton had failed to show good cause for its nonattendance at the conference. Neither the initial notice of default nor the order of the chief legal counsel sustaining the same was the result of a decision after a hearing on the merits. A hearing on the merits of Jenkins' discrimination claim against Pinkerton has not occurred. Our analysis, however, does not end here because a hearing on the merits is not always required to give an administrative decision finality. See *Kalush*, 298 Ill. App. 3d 980 (where the order of the chief legal counsel sustaining a dismissal was considered a "final order" for purposes of appeal).

Although the *Kalush* court was not faced with a jurisdictional claim, the court held that a dismissal order was a "final order" for purposes of judicial review. *Kalush*, 298 Ill. App. 3d at 988-89. We agree with *Kalush* that a decision by the chief legal counsel sustaining a dismissal under section 7—101.1(A) is a "final order" subject to judicial review because a dismissal order can be as conclusive or final as any decision or hearing on the merits. *Brauer Machine & Supply Co. v. Parkhill Truck Co.*, 383 Ill. 569, 577-78, 50 N.E.2d 836 (1943).

*Brauer* dealt with the issue of whether an order entered by the circuit court, quashing service of summons, was final and appealable. Finding that the order was final, our supreme court first discussed the term "final judgment" and noted that the term, as ordinarily used, has a definite and fixed meaning. To be final, the court said the judgment or order must terminate the litigation between the parties on the merits so that, if affirmed, the trial court has only to proceed with the execution of judgment. In addition, while observing that this general definition is well settled, the court further held:

"The final decision from which an appeal lies does not necessarily mean such decision or decree, only, which finally determines all the issues presented by the pleadings. It may, with equal propriety, refer to the final determination of a collateral matter, distinct from the general subject to the litigation, but which, as between the parties to the particular issue, settles the rights of the parties." *Brauer*, 383 Ill. at 574-75.

Finding that the order of the lower court quashing the service finally disposed of the case, the court said:

"It is true, the order, in form, was only an order quashing the service of the summons. It was not an order dismissing the suit, nor was it in the form of a final judgment on the merits. Regardless of its form, however, it was a complete and final disposition of the case, based upon the conclusion the court had reached that appellee was not amenable to the service of process in the manner in which the summons was served. On that issue it was not only as effectual and conclusive but it was as final as any decision upon the merits." *Brauer*, 383 Ill. at 577-78.

Unlike a dismissal or an order quashing service, the default order entered here without any determination of damages is not a complete or final disposition of Jenkins' discrimination claim. Here the order of the chief legal counsel was essentially "interlocutory." "Interlocutory" is defined in Black's Law Dictionary as that "which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Black's Law Dictionary 815 (6th ed. 1990). The default order standing alone is not decisive or conclusive of the rights of the parties to the discrimination complaint. At most, the decision of the chief legal counsel amounted to a finding of liability, without any damages being decided. A finding of liability alone on a claim seeking damages does not dispose of the subject matter of that claim until damages have been determined. *Stotlar Drug Co. v. Marlow*, 239 Ill. App. 3d 726, 728, 607 N.E.2d 346 (1993) (holding an order of default was not final where it resolved only the question of liability and the case was continued for proof on the issue of damages).

In its petition for rehearing, the Department states that the Administrative Review Law does not define a final "administrative decision." It then goes on to equate an administrative decision with a "final administrative decision" without citation to any cases or statutory section to support its claim. Correcting this inaccuracy in a footnote, the Department says that the statutory definition of administrative decision implicitly connotes finality.

Later in its petition for rehearing, the Department again, without

any case authority or statutory support, says: "The Administrative Review Law provides that final orders are those orders by an administrative agency, 'rendered in a particular case, which affect the legal rights, duties or privileges of parties, and which terminate the proceedings before the administrative agency.' 735 ILCS 5/3—101 (1996)."

Contrary to the Department's claim, section 3—101 does not say that final orders are administrative decisions. 735 ILCS 5/3—101 (West 1996). It merely defines an administrative decision as detailed above. We have found no language in either the Act or the Administrative Review Law that explicitly defines either "final order" or "final administrative decision." If the legislature wanted to define "final order" or "final administrative decision," it could have done so. Moreover, if the legislature intended to equate the term "administrative decision" with "final order" or "final administrative decision," it could have done that as well. The legislature chose to do neither. Accordingly, we are not bound by the Department's unsupported claim that a "final order" is an administrative decision as that term is defined in section 3—101 of the Administrative Review Law. 735 ILCS 5/3—101 (West 1996).

We are persuaded by the Commission's position that a "final order" was not rendered in this case because the default order did not terminate the proceedings before the administrative agency. See *Kvidera*, 168 Ill. App. 3d at 382 (holding that an order by the trial court remanding the cause to the agency to impose a sanction other than the one imposed by the agency was not a "final and appealable" order because it did not terminate the litigation between the parties on the merits); see also *Mitrenga v. Martin*, 110 Ill. App. 3d 1006, 1008, 443 N.E.2d 268 (1982) (holding the appellate court lacked jurisdiction to hear an appeal where the circuit court had the power to remand the agency decision for further proceedings). We again point out that where either a respondent fails to file a timely request for review of a notice of default, or the default is sustained on review by the chief legal counsel, the statute requires the Commission to "enter a default order and set a hearing on damages." 775 ILCS 5/7—101.1(C) (West 1996). This mandate, in our opinion, evidences a clear intent by the legislature to give finality to a default order only after the Commission enters a default order and conducts a hearing on damages. Were we to affirm the order of the chief legal counsel sustaining the default, the proceedings would not terminate. The Commission would still have to conduct a hearing on damages. Either Pinkerton or Jenkins could conceivably again appeal the decision of the Commission on the issue of damage. Consequently, there was no finality to the default order entered by the chief legal counsel in this case.

Assuming, *arguendo*, that an "administrative decision" as defined under 3—101 should be equated with the term "final order," we would nonetheless conclude that no "final order" was entered in this case. 735 ILCS 5/3—101 (West 1996). As we pointed out earlier, when the chief legal counsel sustained the default, she essentially entered a finding of liability against Pinkerton for its failure to appear. We conclude that a determination of liability by default without a determination of damages does not meet the statutory definition of an administrative decision "which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1996); see also *Skrypek v. Mazzocchi*, 227 Ill. App. 3d 1, 7, 590 N.E.2d 990 (1992) (holding that a default judgment becomes a final order after damages are set, thereby fixing the rights of the parties); *Stotlar*, 298 Ill. App. 3d at 728 (holding that a default judgment is final if it grants the plaintiff relief and resolves the case entirely).

Without a hearing on damages, the legal rights of the parties have not been affected or fixed. Nor have the proceedings terminated before the agency because the statute requires a hearing on damages to be undertaken by the Commission. 775 ILCS 5/7—101.1(C) (West 1996). Since the Commission must determine damages, which only then will fix the legal rights of the parties, and the proceedings have not terminated, no "final order" was entered and we lack jurisdiction to hear this case.

The fact that the chief legal counsel characterized the default order in this case as "final" cannot confer jurisdiction on this court where the order was not final in substance. *Smith v. Goldstick*, 110 Ill. App. 3d 431, 436, 442 N.E.2d 551 (1982).

Finally, it should be noted that in construing paragraphs (A) and (C) of section 7—101.1, this court is guided by the cardinal rule of statutory construction, which requires sections of a statute to be read with reference to one another so that both may be given "harmonious effect." *Galvin v. Galvin*, 72 Ill. 2d 113, 118, 378 N.E.2d 510 (1978); 775 ILCS 5/7—101.1(A), (C) (West 1996). Reading paragraphs (A) and (C) of section 7—101.1 as a whole, we conclude that the proceedings before the administrative agency terminate and become final for purposes of appeal only after the Commission enters the default order and considers the issue of damages. 775 ILCS 5/7—101.1(A), (C) (West 1996).

Accordingly, for all of the above reasons, we find that the order

sustaining the notice of default was an interlocutory one which deprives this court of jurisdiction over the cause.

Appeal dismissed.

CAHILL, P.J., and BURKE, J., concur.