THIRD DIVISION
December 20, 2006

No. 1-05-3471

| | | |
|---|---|---|
| QUEEN A. TIYE SEARLES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) | No. 04CH21856 |
| ARNE DUNCAN, as Chief Executive Officer of the Board, | ) | |
| RUTH MOSCOVITCH, Individually and as General Counsel of | ) | |
| the Board, SUNIL KUMAR, Individually and in his official | ) | |
| capacity as Assistant General Counsel, JOHN FRANZ, Individually | ) | |
| and as Chief Labor Relations Officer of the Board, ASCENCION | ) | |
| JUAREZ, as Chief Human Resources Officer of the Board, | ) | |
| WENDY HAAS, Individually and as Director of the Department | ) | |
| of Human Resources, Bureau of Employee Health Services | ) | |
| of the Board, GWENDOLYN BOYD, Individually and as | ) | |
| the Principal of John Marshall Metropolitan High School, and | ) | |
| THOMAS LAMBERT, Individually, | ) | The Honorable |
| | ) | Anthony L. Young, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Queen A. Tiye Searles brought an action in the trial court for administrative review against defendants the Board of Education of the City of Chicago (the Board), Arne Duncan, in his official capacity as chief executive officer of the Board, Ruth Moscovitch, individually and in her official capacity as general counsel of the Board, Sunil Kumar, individually and in his official capacity as assistant general counsel of the Board, John Franz, individually and in his official capacity as chief labor relations officer of the Board, Ascencion Juarez, in his official capacity as chief human resources officer of the Board, Wendy Haas, individually and in her official capacity as director of the department of human resources, bureau of employee health

services, of the Board, Gwendolyn Boyd, individually and in her official capacity as the principal of John Marshall Metropolitan High School, and Thomas Lambert, a clinical psychologist appointed by the Board to assess plaintiff's mental fitness. Plaintiff sought review of a letter from Haas notifying plaintiff that Lambert had found her unfit to perform her duties as a teacher and placing her on unpaid medical leave for two years. The trial court dismissed plaintiff's complaint, finding subject matter jurisdiction lacking because a final administrative decision had not been made on the matter. Plaintiff appeals, contending that jurisdiction was proper in the trial court because the letter was a final adjudication of the matter; that, alternatively, the trial court should have exercised its "equitable jurisdiction" to consider the matter; that the action was not barred by the doctrine of *res judicata*, as argued by defendants in their motions to dismiss; and that the trial court erred in refusing to order defendants to file an administrative record in the trial court.

Late in the 2002-03 school year, plaintiff indicated to Boyd, the principal of the school in which plaintiff taught, and Duncan that she had experienced extreme stress from her position as a teacher. Plaintiff stated that the stress had made it impossible for her to perform her job and requested extended sick leave with pay and reassignment to a non-classroom position. Evidently the Board refused plaintiff's request because plaintiff returned to her position as a teacher at the beginning of the 2003-04 school year. On September 12, 2003, by letter, Duncan directed plaintiff to report for a medical examination to evaluate her physical and mental fitness to perform her job duties.

Lambert examined plaintiff and evaluated her fitness on September 19, 2003. Lambert concluded that plaintiff was not fit to perform her duties as a teacher. In Lambert's opinion,

plaintiff's presentation was consistent with major depression with severe psychotic features and panic disorder. Lambert found that plaintiff needed immediate psychiatric treatment and her return to work should be contingent on her compliance with that treatment.

On September 22, 2003, Haas notified plaintiff of Lambert's opinion, apprised her that she was welcome to present medical evidence to contest Lambert's findings and placed her on a medical leave of absence from September 22, 2003, through September 22, 2005. Haas indicated that prior to returning to work plaintiff would be required to contact the bureau of employee health services.

Plaintiff was thereafter examined by three other doctors. She submitted those doctors' evaluations to Haas. Dr. Gail Basch's evaluation indicated that plaintiff did not suffer from major depression or psychotic disorder. Dr. Dianne Glenn's evaluation indicated that plaintiff presented no suicidal, homicidal or psychotic features, and that plaintiff had reported that she was hopeful and felt able to return to work. Dr. Sharon Lieteau's evaluation indicated that plaintiff was not experiencing severe psychiatric illness, that she was experiencing mild anxiety from her current situation but that anxiety did not affect plaintiff's ability to make rational judgment or act appropriately.

On November 12, 2003, plaintiff filed a complaint in the circuit court, alleging, *inter alia*, that her Illinois and federal due process rights were infringed by the Board's action in placing her on a two-year unpaid medical leave of absence. The case was removed to the United States District Court where it was eventually dismissed with prejudice after plaintiff refused to present herself for a deposition.

1-05-3471

On February 2, 2004, plaintiff filed a second complaint in the United States District Court alleging employment discrimination. Plaintiff filed two petitions to proceed *in forum pauperis* in the district court. Both petitions were denied. The Seventh Circuit Court of Appeals dismissed plaintiff's appeal for failure to pay the required docketing fee. Plaintiff filed a petition for *certiorari* with the United States Supreme Court.

Meanwhile, in January 2004, plaintiff enlisted the assistance of Gwendolyn Reeves, an attorney for the Chicago Teachers Union (the CTU), to which, apparently, plaintiff belonged. Reeves wrote Haas demanding plaintiff's return to work with full back pay or that the Board provide plaintiff with a hearing on the matter. On February 13, 2004, Haas responded that, in order to dispute Lambert's findings, plaintiff would need to undergo an examination by an independent medical examiner. In her letter, Haas included a list of several examiners the Board had approved to provide such an examination.

Shortly thereafter, in March 2004, plaintiff wrote Reeves a letter clarifying that she did not wish to be reinstated in her position as a teacher because "[a]n immediate reinstatement of [plaintiff] to her teaching position in the middle of the third quarter could be devastatingly stressful." Instead, she wished to be paid "full back pay and return to full base teacher pay pending settlement" with the Board.

Reeves replied that because plaintiff had elected to proceed *pro se* in her actions before the district court, she had effectively denied the CTU's representation. Reeves enclosed the February 2004 letter from Haas indicating the procedure plaintiff was required to follow to contest Lambert's findings.

4

In the autumn and winter of 2004, plaintiff appealed to Haas, Duncan, Moscovitch and Kumar to award her back pay from September 22, 2003, and place her in "a temporary position pending appointment to a permanent position outside of the classroom" and again requested a hearing on the matter. Haas and Moscovitch both wrote to plaintiff, reiterating that in order to be reinstated, plaintiff was required to comply with an independent examination by one of the Board-approved physicians and that the Board would bear the cost of the examination.

On December 30, 2004, plaintiff filed a *pro se* complaint, which is the subject of this appeal, seeking judicial review of Haas's September 22, 2003, letter. While this case was proceeding in the trial court, plaintiff obtained assistance of counsel and is represented by counsel on appeal.

Defendants filed motions to dismiss plaintiff's complaint arguing that the individual defendants were not proper parties, that the trial court did not have subject matter jurisdiction to review the September 22, 2003, letter and that the action was barred by the doctrine of *res judicata*. On September 19, 2005, the trial court granted defendants' motions and dismissed the case, with prejudice, for lack of subject matter jurisdiction. Plaintiff appealed.

Plaintiff first contends that the trial court erred in finding that it lacked subject matter jurisdiction to review the September 22, 2003, letter. To this end, plaintiff argues that the letter, which placed her on two-year medical leave, was a final adjudication, vesting the trial court with jurisdiction to decide her claim for administrative review, and, moreover, that the Board's inaction after plaintiff submitted the medical opinions of Basch, Glenn and Lieteau and made several formal demands for a hearing further indicated the finality of the Board's letter.

Pursuant to the Illinois School Code (the Code), the provisions of the Code of Civil Procedure governing the review of administrative decisions will govern proceedings for judicial review filed under the Code. 105 ILCS 5/34-85b (West 2004). Under those provisions, an action for administrative review can only be taken from a final administrative decision. 735 ILCS 5/3-103 (West 2004); Buroff v. Board of Fire & Police Commissioners of the Village of Chicago Ridge, 248 Ill. App. 3d 626, 629 (1993). "Such a determination is made following 'some sort of adversarial process involving the parties affected, where a hearing on controverted facts is held, and ultimately a disposition is rendered by an impartial officer.' " Buroff, 248 Ill. App. 3d at 629, quoting Taylor v. State Universities Retirement System, 159 Ill. App. 3d 372, 376 (1987). Put another way, a final administrative decision is one "which affects the legal rights, duties or privileges of the parties and *which terminates the proceedings before the administrative agency*." (Emphasis added.) 735 ILCS 5/3-101 (West 2004).

We disagree with plaintiff's contention that the letter placing her on medical leave of absence was a final administrative decision. First, the letter did not "terminate[] the proceedings" (735 ILCS 5/3-101 (West 2004)) before the Board. On the contrary, as was made clear in letters from Haas, Reeves and Moscovitch to plaintiff, if plaintiff wished to contest Lambert's findings, the next necessary step was to submit to an independent medical examination by a Board-approved doctor. These actions by the Board, advising plaintiff of the next necessary step to contest Lambert's findings, were indicative of the Board's intention to retain jurisdiction over the matter and were not, as plaintiff argues, indicative of its intention that the letter serve as its final adjudication of the matter. Plaintiff chose not to take the required next step.

1-05-3471

Furthermore, the determination that plaintiff would be placed on a medical leave of absence did not follow an adversarial process where a hearing was held and a decision was rendered by an impartial officer. See Buroff, 248 Ill. App. 3d at 629. On this point, we note that Kalush v. Illinois Department of Human Rights Chief Legal Counsel, 298 Ill. App. 3d 980 (1998), and Pinkerton Security & Investigation Services v. Department of Human Rights, 309 Ill. App. 3d 48 (1999), which plaintiff cites for the propositions that a final administrative decision need not always follow a hearing and that the decision of an agency's general counsel may constitute a final administrative decision, are distinguishable. Both cases involved provisions of the Human Rights Act which specifically provided that a final order entered by chief legal counsel of the Department of Human Rights was appealable by filing a petition for review in the appellate court. See 775 ILCS 5/7-101.1(A), 8-111(A)(1) (West 1996). The Code contains no similar provision. Furthermore, in the cited cases, the Department of Human Rights did not apprise the plaintiffs that further steps were necessary before the Department, which would indicate that it intended to retain jurisdiction of the case, as the Board did here. Accordingly, we find that, because a final administrative decision had not been reached in plaintiff's case, the trial court lacked subject matter jurisdiction to consider the case.

Alternatively, plaintiff presents a variety of arguments as to why, despite the fact that the Board's letter placing plaintiff on leave of absence was not a final administrative decision, the court should have exercised its "equitable jurisdiction" and considered plaintiff's request for administrative review.

At the outset, we note that Black's Law Dictionary provides the following definition of

7

equity jurisdiction:

> "In a common-law judicial system, the power to hear certain civil actions
>
> according to the procedure of the court of chancery, and to resolve them
>
> according to equitable rules.
>
>> '[T]he term equity jurisdiction does not refer to jurisdiction in the
>>
>> sense of the power conferred by the sovereign on the court over
>>
>> specified subject-matters or to jurisdiction over the res or the
>>
>> persons of the parties in a particular proceeding but refers rather to
>>
>> the merits. The want of equity jurisdiction does not mean that the
>>
>> court has no power to act but that it should not act, as on the
>>
>> ground, for example, that there is an adequate remedy at law.' "
>>
>> Black's Law Dictionary 869 (8th ed. 2004), quoting de Funiak,
>>
>> Handbook of Modern Equity 38 (2d ed. 1956).

Plaintiff has failed to explain, and we are at a loss to understand, how the doctrine of equitable

jurisdiction applies to this case. Nonetheless, we will address plaintiff's specific arguments.

First, plaintiff cites <u>Big River Zinc Corp. v. Illinois Commerce Comm'n</u>, 232 Ill. App. 3d

34, 39 (1992), which held that, despite the fact that a challenge to an administrative agency's

decision is not ripe, it may be reviewed if the issue is fit for judicial decision and the parties would

endure hardship as a result of the court withholding consideration. In <u>Big River</u>, the Commerce

Commission approved a public utility's proposal to implement a rider to recover certain research

and development costs. The plaintiff challenged the "legal authority to permit utilities to recover

their demand-side management costs through riders instead of requiring them to utilize formal rate-making proceedings." Big River, 232 Ill. App. 3d at 39. The court noted that, though the Commerce Commission had authorized the implementation of a rider, no specific rider was approved. Accordingly, the Commerce Commission's "pronouncement on the propriety of riders will have no immediate, tangible effects on [the plaintiff], its shareholders, or its customers." Big River, 232 Ill. App. 3d at 39. The action, therefore, was not ripe.

Big River presented a different issue than that presented in this case. In Big River, there was no argument concerning the finality of the Commerce Commission's pronouncement; instead, the issue was ripeness, more specifically, whether the pronouncement resulted in hardship to the plaintiffs. Here, though the September 22, 2003, letter clearly presented an actual controversy affecting plaintiff's rights, as discussed above, the letter was not a final decision. Accordingly, the issue before this court is one of jurisdiction, rather than ripeness.

Next, plaintiff cites Consolidated Freightways Corp. of Delaware v. Human Rights Comm'n, 305 Ill. App. 3d 934, 938 (1999), which held that a trial court may exercise jurisdiction over an interlocutory order of an administrative agency under "four circumstances where a party is not required to exhaust administrative remedies before filing suit: (1) the authority of the agency to act is challenged; (2) administrative review would be futile; (3) no question of fact is presented and agency expertise is not involved; and (4) irreparable harm would result from the further pursuit of administrative remedies."

None of these circumstances exist in this case. Plaintiff does not challenge the authority of the Board to act when a teacher has been deemed unfit to teach by a physician. There is no

indication that administrative review would be futile or that plaintiff would suffer irreparable harm if she were to pursue administrative remedies. On the contrary, the record seems to indicate that had plaintiff continued with the process prescribed by the Board for obtaining review of her fitness, she may have been reinstated as a teacher. Finally, the question of plaintiff's fitness remains; accordingly, questions of fact are implicated in plaintiff's complaint.

We further note that defendants respond to plaintiff's "equitable jurisdiction" argument by averring that plaintiff was not entitled to a hearing. Again, the issue before this court is whether the trial court properly dismissed plaintiff's complaint for lack of subject matter jurisdiction, and we are not charged with assessing the merits of that complaint. Moreover, this issue was not raised by plaintiff on appeal. Even if we were to consider defendants' contention, the record does not illuminate the procedure for procuring a hearing in a case such as plaintiff's nor have defendants cited any Board rules or statutes which describe such procedure.[1]

Though the issue need not be addressed in this appeal, finally, and significantly, we observe that plaintiff apparently does not wish to be reinstated as a teacher. The record reveals that, instead, plaintiff has repeatedly requested that the Board place her in a non-classroom position. We can find no statute or rule that entitles plaintiff to such a remedy.

Having determined that plaintiff's case was properly dismissed for lack of jurisdiction, we

---

[1] Defendants cite a 1982 case, <u>Dusanek v. Hannon</u>, 677 F.2d 538 (7th Cir. 1982), in which the court described the procedure for obtaining a hearing after a teacher is adjudged unfit. However, by defendants' own admission, that case was decided under "a predecessor to the Board's current policy on fitness for duty examinations."

need not consider her arguments that the case was not alternatively barred by the doctrine of *res judicata* and that the trial court erred in refusing to order the Board to file an administrative record in the trial court.

Affirmed.

THEIS, P.J., and KARNEZIS, J., concur.